JACOB HOROWITZ *vs.* STATE STREET TRUST COMPANY & others, trustees.

Worcester.   February 9, 1933. — May 22, 1933.

Present: RUGG, C.J., CROSBY, WAIT, DONAHUE, & LUMMUS, JJ.

*Practice, Civil,* Report.   *Trust,* Authority of trustee, Construction of instrument creating trust.   *Agency,* Scope of authority, Ratification.

Where the defendant at the trial of an action did not file a motion that a verdict be ordered in his favor and the trial judge, after a verdict for the plaintiff, reported the action with a statement in his report that the defendant did not "question the amount of damages, assuming that there was sufficient evidence of liability, but . . . [contends] that the evidence on the point of liability is insufficient to justify a verdict for the plaintiff," the action properly was before this court for determination of the question, whether there was sufficient evidence of liability.

A declaration of trust of real estate gave three trustees power to make leases of the property and to pay commissions to brokers, and provided that the trustees might act with or without a meeting and by proxy; that action of a majority of them should be valid; and that "no purchaser or person dealing with any Trustee purporting to act during the absence of any other Trustee or under any delegation of authority from any other Trustee shall be concerned to ascertain or inquire whether an occasion exists in which he is authorized so to act or in which such delegation is permitted or whether such delegated authority is still subsisting."   The property was conveyed to the trustees by a corporation, the president of which was one of the trustees and which the trustees subsequently employed to procure tenants for them.   In an action by a broker against the trustees for a commission alleged to have been earned in negotiating a lease of the property, there was evidence that, previous to such conveyance by the corporation, the president in its behalf had agreed to pay the plaintiff a commission for procuring a lessee; that conversations and correspondence between those persons continued until some months after the conveyance, the plaintiff knowing that the president then was a trustee; and that about a year later the plaintiff made claim for a commission to one of the other trustees, who replied to him that the trustees had appointed the corporation as their renting agent.   There was no evidence that the first trustee was authorized to act for either of his cotrustees or that the plaintiff had any communication or dealing with either or that either knew of the plaintiff's employment or claim for a commission previous to his letter to the second trustee. *Held,* that

(1) The mere fact that the first trustee was president of the corporation did not give him authority to bind the trust by the contract to pay the plaintiff a commission;

(2) The plaintiff was bound to know the extent of the authority of the first trustee in dealing with the trust property as trustee;

(3) In the circumstances, the provision of the declaration of trust above quoted did not authorize the first trustee to act alone in contracting with the plaintiff;

(4) The first trustee, acting alone, had no authority to bind the trust;

(5) A finding was not warranted that the action taken by the first trustee was ratified by either of his cotrustees;

(6) The plaintiff could not recover.

CONTRACT. Writ dated November 23, 1925.

The action was tried in the Superior Court before *J. J. Burns*, J. Material evidence is stated in the opinion. There was a verdict for the plaintiff in the sum of $5,522.30. The judge reported the action for determination by this court.

*C. F. Rowley*, (*D. R. Pokross* with him,) for the defendants.

*G. H. Mason*, for the plaintiff.

CROSBY, J. This is an action of contract brought by a real estate broker who seeks to recover a commission for services in negotiating a lease of certain premises for the defendants as trustees of the Worcester Investment Trust. The case was tried in the Superior Court to a jury, and a verdict was returned for the plaintiff in the sum of $5,522.30. The case is before this court upon a report of the presiding judge wherein it is recited that "The defendants do not question the amount of damages, assuming that there was sufficient evidence of liability, but they contend that the evidence on the point of liability is insufficient to justify a verdict for the plaintiff."

There was evidence from which the following facts could be found: "In 1917, the Bankers Realty Company, a Massachusetts corporation, through Helen M. Grimard, a straw, acquired the so called Payne Block, a business building on the corner of Main and Walnut Streets, Worcester. Albert O. Hagar and William M. Wadden were president and treasurer respectively of the Bankers Realty Company. In 1922 Helen G. Kearney, formerly Helen M. Grimard,

and David R. Kearney, her husband, conveyed their title to five trustees, of whom the said Albert O. Hagar and William M. Wadden were two, under a declaration of trust, setting up a trust known as Worcester Investment Trust.   On November 7, 1923, these trustees reconveyed the premises to Bankers Realty Company.   Thereafter a mortgage was put on the property for $90,000 by the Bankers Realty Company, which then deeded the property to the defendants as Trustees of the Worcester Investment Trust, of which the said Albert O. Hagar was one of three trustees, under a declaration of trust dated November 15, 1923."

The first declaration of trust was in evidence.   Material provisions of the last trust are as follows: The trustees shall have power, subject to certain limitations therein expressed, to improve the trust property as they may deem advisable;  to let to tenants at will or for any term of years, and to lease such offices and employ such counsel, managers, agents or clerical or other assistance as they may deem proper for the sale or management of any part of the trust property and pay reasonable compensation therefor without the trustees being answerable for the acts and defaults of such counsel, managers or agents;  to pay commissions to or to reimburse the expenses of brokers or others in respect of the purchase or sale of property or any interest therein, and "Generally in all matters to deal with the trust premises and to manage and control the same and conduct the said trusts as fully as if the Trustees were the absolute owners of the trust premises and to execute and do all such agreements deeds instruments and things as the Trustees may deem proper for any of the said purposes."   The trust agreement further provides that Albert O. Hagar should hold office as trustee for a term of two years from November 15, 1923.   Paragraph 11 provided that "no purchaser or person dealing with any Trustee purporting to act during the absence of any other Trustee or under any delegation of authority from any other Trustee shall be concerned to ascertain or inquire whether an occasion exists in which he is authorized so to act or in which such

delegation is permitted or whether such delegated authority is still subsisting."

The plaintiff, a real estate broker, became acquainted with Hagar in 1917 when he acted as a broker in the sale of the Payne Block to the Bankers Realty Company of which Hagar was president. On March 11, 1921, Hagar as president wrote the plaintiff that if he should consummate "a lease between this company and your client or effect a sale of the property between now and July 1, 1921, we are to pay you a commission of $20,000. If you do not succeed in consummating either a sale or a lease, it is understood that we are under no obligation to you whatsoever." On February 24, 1922, Hagar as president of the City Central Corporation wrote the plaintiff in part as follows: "We understand that you have in mind a party who might be interested in the sale or lease of the premises at the corner of Main and Walnut Streets, Worcester, known as the Paine block. If you will introduce this party to us and we shall within two years thereafter sell or lease the entire premises to the party so introduced by you we will pay as our broker to you a commission upon such sale or lease of . . . $30,000." Sometime in 1922 Hagar told the plaintiff he was going to put up a new ten-story building on the site, and asked him if "he would be on the lookout for tenants for that building." At that time Hagar told him the respective prices for inside and corner stores. There was evidence that the plaintiff had several conversations with Hagar relative to the procuring of tenants for the building; that there was correspondence between these parties upon the same subject; that the plaintiff had interviews with one Ulian who was a prospective tenant for one of the stores; that the plaintiff had endeavored to procure others to become tenants; that he had written the State Street Trust Company a letter in which he claimed a commission for obtaining Ulian as a tenant. There was other evidence offered by the plaintiff of services rendered in an endeavor to procure tenants, which need not be recited.

The contention of the plaintiff is that no question of law is properly before the court. Although it does not appear

that at the close of the evidence the defendants moved for a directed verdict in their favor, the report plainly shows that the case was intended to be reported to this court for the determination of the question whether the evidence was sufficient to warrant a verdict in favor of the plaintiff, and that it was the only question raised upon which there was any controversy at the trial.  The case is properly before us.  *Crowe* v. *Boston & Maine Railroad*, 242 Mass. 389, 392, 393.

Under the last declaration of trust Hagar was constituted one of three trustees of the Worcester Investment Trust, the other trustees being Albert L. Scott, and the State Street Trust Company.  The trustees were empowered among other things to let the property to tenants, and to perform other duties which need not be referred to.  The report discloses that the first communication between the plaintiff and Hagar is shown by a letter written by Hagar to the plaintiff dated March 11, 1921.  Other communications by letter and conversations were had between them which continued until early in March, 1924.  Hagar told the plaintiff that the plans of the building were being changed.  The plaintiff previously to this time had various communications with Ulian and endeavored to secure him as a tenant, but no final agreement for the rental of the store to Ulian had been completed.  On March 13, 1925, the plaintiff, not having previously known that the Bankers Realty Company had charge of the rental of the building, wrote the defendant company that he had secured Ulian as a tenant and that he claimed a commission in accordance with his agreement with Hagar.  By letter dated March 16, 1925, the company replied that the Bankers Realty Company had been appointed agents to rent the building by the owners, the trustees of the Worcester Investment Trust.

Apart from the question whether the evidence would warrant a finding that the plaintiff was the efficient cause of obtaining Ulian as a tenant, which we need not decide, the evidence would not warrant a finding that Hagar, as one of three trustees of the Worcester Investment Trust,

had any express or implied authority to bind his cotrustees or the trust by a contract to pay the plaintiff a commission. *Austin* v. *Shaw,* 10 Allen, 552. *Boston* v. *Robbins,* 126 Mass. 384, 388. *O'Herron* v. *Gray,* 168 Mass. 573, 576. *C. A. Dodge Co.* v. *Western Avenue Tabernacle Baptist Church,* 247 Mass. 330, 332. *Loughery* v. *Bright,* 267 Mass. 584, 588, 589. The trust agreement expressly provides that "The Trustees may act with or without a meeting and by proxy and the action of a majority of the Trustees shall be valid and binding as the action of the Trustees and all leases contracts and other documents except conveyances of land executed by a majority of the Trustees hereunder shall be valid and as effectual and binding as if executed by all the Trustees." The plaintiff knew that Hagar was acting as trustee and was bound to know the extent of his authority in dealing with the property of the trust. *Rand* v. *Farquhar,* 226 Mass. 91, 99. *Baker* v. *James,* 280 Mass. 43, 47. There is no evidence to warrant a finding that the plaintiff acted under the authority of any trustee of the Worcester Investment Trust except Hagar, or that he ever had any communication with the other trustees, or that they knew of any employment of the plaintiff by Hagar to make the contract upon which the plaintiff relies. It follows that Hagar, who died in 1927, alone was without authority to make any contract with the plaintiff. The trustees of the Worcester Investment Trust entered into a contract with the Bankers Realty Company whereby the latter on February 4, 1924, was made the agent of the trust to secure tenants for the building. Hagar in dealing with the plaintiff was the agent of the realty company and not of the trustees. As president of the realty company he had no authority to bind the Worcester Investment Trust by the contract upon which the plaintiff relies. *Bi-Spool Sewing Machine Co.* v. *Acme Manuf. Co.* 153 Mass. 404. That authority was vested in the trustees. It was held by this court in *Horowitz* v. *S. Slater & Sons, Inc.* 265 Mass. 143, at pages 147–148, that a person by virtue of his office either as president or as general manager of a corporation had no authority to sell mills,

"or to employ a person" to sell them, and that "'The directors, and not the president, have the powers of the corporation, and the president has no implied authority as such to act as the agent of the corporation, but, like other agents, he must derive his power from the board of directors or from the corporation.' *Wait* v. *Nashua Armory Association*, 66 N. H. 581, 582."

There is no evidence that a majority of the trustees ever took any part in the making of the contract in question, or that two of them, namely, Scott and the State Street Trust Company, knew of the contract when negotiations were carried on respecting it by Hagar and the plaintiff, nor is there any evidence to show that a majority of the trustees ratified the contract. It does not appear that the State Street Trust Company ever knew of the plaintiff's claim before it received his letter dated March 13, 1925, and to which the company replied on March 16, 1925, to the effect that the trustees had appointed another person as agent to operate and rent the building.

The declaration of trust recited that the trustees were authorized "To pay commissions to or to reimburse the expenses of brokers or others in respect of the purchase or sale of property or any interest therein and for services . . . in procuring tenants or otherwise" and "Generally in all matters to deal with the trust premises and to manage and control the same and conduct the said trusts as fully as if the Trustees were the absolute owners of the trust premises and to execute and do all such agreements deeds instruments and things as the Trustees may deem proper for any of the said purposes." The declaration of trust further provides in paragraph 11 under the title "Protection of Persons dealing with Trustees" that "No person dealing with the Trustees as they then appear of record in the Registry of Deeds . . . shall be bound to inquire further as to the persons who are then Trustees hereunder and such record shall be conclusive evidence of the personnel of said Trustees and of any changes therein. . . . And no purchaser of the trust premises or any part thereof or person dealing with the Trustees shall be bound to ascer-

tain or inquire as to the existence . . . of . . . a sale mortgage pledge or charge . . . as to the purpose or regularity of any of the acts of the Trustees or any of them purporting to be done in pursuance of any of the . . . powers herein contained or as to the regularity of the discharge resignation or appointment of any Trustee and any appointment of a new Trustee purporting to be executed by the Trustee or Trustees or a majority of them in office at the time of such discharge resignation or appointment for the purpose of vesting the trust premises in the Trustees for the time being of these presents . . . shall as to the trust premises be conclusive evidence in favor of any such purchaser or other person dealing with the Trustees of the matters therein recited relating to such discharge resignation or appointment or the occasion thereof.  And no purchaser or person dealing with any Trustee purporting to act during the absence of any other Trustee or under any delegation of authority from any other Trustee shall be concerned to ascertain or inquire whether an occasion exists in which he is authorized so to act or in which such delegation is permitted or whether such delegated authority is still subsisting." It is the contention of the plaintiff that the last sentence above quoted authorized one trustee to act in making a contract with the plaintiff.  We do not so construe the language used.  It is to be interpreted in connection with the other provisions in paragraph 11.  Properly interpreted it means that a purchaser or person dealing with any trustee who purports to act in the absence of another trustee or purports to be authorized to act for another trustee shall not be required to ascertain whether such trustee is authorized so to act as the agent or representative of a cotrustee.  The words in the trust agreement "purporting to act during the absence of any other Trustee" properly construed mean giving as a reason for acting alone with reference to something which otherwise would be dealt with by at least a majority of the trustees.  "During the absence" relates to a period of time during which another trustee or trustees are not present to participate in the transaction of the business at hand.  In the same

sentence the contemplated situation is referred to as an "occasion," that is a happening, not something to be often contemplated. It provides for a contingency, so that the business of the trust may not suffer for want of a quorum of the trustees. The sentence as a whole protects a third party dealing with one trustee in such an "absence" of others, if the single trustee purports to act alone because the others are not available. If one trustee so acts, a third party is not bound before acting to investigate at his peril and ascertain that the others are in fact unavailable as the trustee dealing with him represents. There is no evidence that Hagar had any authority to act for either of his co-trustees. It could not have been found that the plaintiff had been employed by the trustees to procure a tenant, and that thereafter the execution of the lease was consummated in the plaintiff's absence. There was no evidence that the lease was executed in bad faith for the purpose of avoiding the payment of a commission as was held in *Glassman* v. *Barron,* 277 Mass. 376, 381. The trust agreement also provides that "The Trustees may act with or without a meeting and by proxy and the action of a majority of the Trustees shall be valid and binding as the action of the Trustees and all leases contracts and other documents except conveyances of land executed by a majority of the Trustees hereunder shall be valid and as effectual and binding as if executed by all the Trustees."

The plaintiff is entitled to have the case considered in the light most favorable to him. The evidence has been carefully considered with the result that we find nothing to warrant a finding that Hagar as agent or trustee of the Worcester Investment Trust or as president of the Bankers Realty Company had authority express or implied to enter into a contract with the plaintiff for his employment by the defendants. There is no evidence from which it could be found that a majority of the trustees ratified the contract. It follows that as the verdict for the plaintiff was not justified by the evidence judgment must be entered for the defendants.

*So ordered.*