68227. COMPUTER MAINTENANCE CORPORATION et al.
v. TILLEY et al.
(322 SE2d 533)

CARLEY, Judge.

Appellant-plaintiff Horton was an employee, shareholder, officer, and director of Computer Maintenance Corporation ("CMC"). In conjunction with his relationship with CMC, Horton executed several documents. The first such document (the "May agreement") provided: Horton would enter into the employ of CMC for a period of three years and would be made a director of the company. Horton would receive an annual salary of $36,000. If the corporation terminated his employment prior to its natural expiration, Horton would be entitled to receive all compensation to which he would have been entitled if his employment had not been so terminated. Additionally, Horton would purchase 100,000 shares of ten-cent par value CMC stock at a price of twenty cents per share. He would pay the company $10,000 and would receive 50,000 shares of stock immediately, and he would purchase the remaining 50,000 shares in installments over a twenty-month period. The company and its shareholders would re-evaluate the stock to a par value of twenty cents per share. Horton would enter into a stock buy-sell agreement such as the one which the other CMC shareholders had previously executed.

Some time after signing the May agreement, Horton became a signatory to the buy-sell agreement which was already in force among the other shareholders. He also executed a certificate of agreed value which set the value of CMC stock at ten cents per share (the "July agreement").

Less than a year after Horton had begun his relationship with CMC, his employment was terminated. CMC attempted to re-purchase its stock from Horton at a price of ten cents per share, in accordance with the July agreement. However, Horton refused CMC's tender, contending that the buy-back price of his stock should be twenty cents per share. Horton instituted the instant lawsuit, which

was characterized as a shareholder's derivative action as well as a suit by Horton individually. The defendant-appellees named in this action were the corporation and its officers and directors. Horton alleged, in relevant part, that CMC had breached its agreement with him, and that the individual defendants had committed acts of waste and mismanagement. Defendant-appellees answered and filed a counterclaim seeking to enforce the July buy-sell agreement. The counterclaim further alleged that defendant-appellees were entitled to an award of the expenses of litigation because Horton had brought the shareholder's derivative suit without reasonable cause. An additional count of the counterclaim sought an award of damages on the ground that Horton had committed certain misdeeds in his capacity as officer and director of CMC.

Cross motions for summary judgment were filed. The trial court granted appellees' motion with regard to their counterclaim to enforce the July buy-sell agreement. Appellees were also granted summary judgment with regard to the shareholder's derivative aspects of Horton's complaint. Horton's motion concerning the breach of contract count of his original complaint and the remaining allegations of the counterclaim was denied. Horton appeals.

1. Horton's claim for breach of contract is based upon the May agreement. Appellees contend that that document is unenforceable because of defects in its execution and that Horton's claim is therefore unviable.

The May agreement purports to be a contract among Horton, CMC, and four individual shareholders of the corporation. A separate signature line is provided for each of those six parties. The line provided for CMC merely bears the signature of appellee Tilley, who was and is president of the company. Although the corporate seal is also affixed, there is nothing on the face of the document to indicate that Tilley signed it in his official capacity. Additionally, his signature is not attested by the secretary or any other officer of the corporation. Thus, the corporate signature requirements of OCGA § 14-2-4 are not met. Compare *Teri-Lu, Inc. v. Ga. R. Bank &c. Co.*, 147 Ga. App. 860 (250 SE2d 548) (1978). See generally *Brega v. CSRA Realty Co.*, 223 Ga. 724 (157 SE2d 738) (1967).

"A president of a corporation does not, by virtue of his office alone, have authority to contract in its behalf [(cits.)], although being the alter ego of the corporation he may be presumed to have power to act for it in matters within the scope of its ordinary business. [Cits.]" *Western American Life Ins. Co. v. Hicks*, 135 Ga. App. 90, 91 (217 SE2d 323) (1975). " 'An instrument executed in the name of a corporation by its president and under the seal of a corporation is presumed to have been executed by its authority, but this presumption is rebuttable.' [Cits.]" *Adams Loan &c. Co. v. Dolvin Realty Co.*, 48 Ga.

App. 183, 184 (3) (172 SE 606) (1933). In the instant case, the uncontroverted evidence established that the May agreement was not within the scope of the ordinary business of CMC and was not a standard corporate contract. There was further uncontradicted evidence that Tilley was not authorized to act on behalf of the corporation in this particular matter without the assent of all of the shareholders. Such assent is not apparent from the face of the document, inasmuch as only two of the four shareholders of the company signed it.

This absence of two of the shareholders' signatures presents yet another difficulty with regard to the execution of the document. As previously noted, each of the shareholders was identified as a party to the May agreement. That agreement provides that the shareholders are to perform certain specified acts, and the language and the format of the document indicate an intent for each shareholder to be a signatory. "When the intent is manifest that the contract is to be executed by others than those who actually sign it, it is inchoate and incomplete, and does not take effect as a valid and binding contract. [Cits.]" *Peacock v. Horne*, 159 Ga. 707, 723 (126 SE 813) (1924). See also *Denton v. Etheridge*, 73 Ga. App. 221 (36 SE2d 365) (1945).

In light of the foregoing defects in the execution of the May agreement, it cannot be said as a matter of law that the signatures which appear on the document were sufficient to establish a binding contract. However, Horton contends that the May agreement was ratified by performance. "The object of securing signatures of the parties to a written contract is, of course, to take it out of the Statute of Frauds and to afford mutuality so that it may be enforced. [Cits.] But this is not the only manner of obtaining mutuality. If one of the parties has not signed, his acceptance is inferred from a performance under the contract, in part or in full, and he becomes bound. [Cits.]" *Cooper v. G. E. Constr. Co.*, 116 Ga. App. 690, 694 (158 SE2d 305) (1967). See also *Western American Life Ins. Co. v. Hicks,* supra. It appears from the record in the case at bar that Horton was employed by CMC in the capacities described in the May agreement. However, there is also evidence that the performance of the parties was not undertaken pursuant to the May agreement, but was in accordance with subsequent oral arrangements. Since the evidence is in conflict as to whether the parties ratified the May agreement by their subsequent conduct, the issue of its enforceability is for jury determination. See *Rogin v. Dimensions South Realty Corp.*, 153 Ga. App. 75 (264 SE2d 555) (1980). The trial court did not err in denying Horton's motion for summary judgment as to the breach of contract count of his complaint.

2. Horton enumerates as error the trial court's ruling that, even if the May agreement is enforceable, the parties had mutually departed from some of its terms. The alleged mutual departure involves the

provisions governing Horton's purchase of CMC stock, the value of the stock, and Horton's salary.

The record shows that Horton received a salary of $2500 per month, rather than the $3000 per month provided in the May agreement. Horton contends that he received $2500 per month because $500 of his monthly salary of $3000 was withheld as payment for CMC stock. While that arrangement would have been in keeping with the terms of the May agreement, there is no evidence that such was ever effected.

The record of the case further indicates that contrary to the terms of the May agreement, Horton purchased CMC stock at a price of ten cents per share. He paid the corporation $10,000 and received 100,000 shares of CMC stock immediately, rather than acquiring the stock over a twenty-month period. This transaction occurred in accordance with the terms of the July agreement and with the terms of a letter of intent which was executed by Horton on the same day he signed the July agreement.

Horton contends that the foregoing facts are not established by uncontradicted evidence, so that a jury issue remains as to whether a mutual departure occurred. In support of this contention, Horton relies on his verified complaint, which alleges that the May agreement is binding and that he paid $14,500 toward the purchase of CMC stock. It is true that verified pleadings which meet the requirements of OCGA § 9-11-56 (e) may create a factual issue sufficient to defeat a motion for summary judgment. *Foskey v. Smith*, 159 Ga. App. 163 (283 SE2d 33) (1981), cert. dismissed 249 Ga. 32 (289 SE2d 248) (1982). However, the verification accompanying Horton's complaint provides that the allegations contained therein are true "as I verily believe." Such a purported verification is "just a variation of our old friend 'information and belief.' [Cits.]" *Heavey v. Security Mgt. Co.*, 129 Ga. App. 83, 85 (198 SE2d 694) (1973). " ' " [U]ltimate or conclusory facts and conclusions of law, as well as statements made on belief or 'on information and belief' cannot be utilized on a summary judgment motion." [Cit.]' [Cit.]" *Freeman v. Pumpco, Inc.*, 167 Ga. App. 312, 313 (306 SE2d 385) (1983). Thus, the allegations of Horton's complaint cannot be considered as evidence in opposition to appellees' motion for summary judgment in the instant case.

Horton further contends that he was required by the terms of the May agreement to execute the July agreement. Regardless of the merits of such an assertion, the May agreement did not require Horton to execute the July letter of intent to purchase CMC stock at a price of ten cents per share. Moreover, contrary to Horton's contentions, there is no evidence of record to suggest that the par value of CMC stock was ever raised to twenty cents per share, as contemplated by the May agreement. The settlement agreement between the corporation

and a former shareholder, upon which Horton relies to create a jury issue in this regard, provides for that particular shareholder to receive $20,000 in exchange for his 100,000 shares of CMC stock *and other specified valuable consideration.* That document is not probative of any issues in the case at bar.

The only competent evidence of record establishes that the parties mutually departed from the terms of the May agreement with regard to the re-evaluation of the par value of CMC stock, the purchase of stock by Horton, and Horton's salary. Since there was no conflict in the evidence, the trial court did not err in deciding this issue as a matter of law. Cf. *Southwest Plaster &c. Co. v. R. S. Armstrong & Bros. Co.,* 166 Ga. App. 373 (304 SE2d 500) (1983). Moreover, with regard to the particular provisions which were affected by the mutual departure, Horton cannot now rely upon the original terms of the May agreement, since he failed to notify appellees of any intention to do so. OCGA § 13-4-4. Accordingly, the trial court correctly concluded that Horton's claims based upon the provisions of the May agreement with regard to his salary, his purchase of CMC stock, and the re-evaluation of the par value of the stock are without merit.

3. In addition to finding a mutual departure, the trial court also ruled that the parties had reached an accord and satisfaction with regard to certain portions of the May agreement. "Accord and satisfaction occurs where the parties to an agreement, by a subsequent agreement, have satisfied the former agreement, and the latter agreement has been executed. The execution of a new agreement may itself amount to a satisfaction of the former agreement, where it is so expressly agreed by the parties; and, without such agreement, if the new promise is founded on a new consideration, the taking of it is a satisfaction of the former agreement." OCGA § 13-4-101.

The record in the instant case authorizes the trial court's finding of an accord and satisfaction with regard to the buy-sell provisions of the May agreement. The accord and satisfaction was achieved by the execution of the July agreement and the July letter of intent to purchase stock. "The execution of a new agreement may itself amount to a satisfaction if the new promise is founded on a new consideration. A new consideration, although slight, will be sufficient to support the new agreement. [Cit.]" *Codner v. Siegel,* 246 Ga. 368, 369 (271 SE2d 465) (1980). Pursuant to the terms of the July agreement and the July letter of intent, Horton purchased 100,000 shares of CMC stock at a price of ten cents per share. He received all 100,000 shares of stock immediately upon his payment of $10,000, instead of receiving the shares in increments over a twenty-month period. Contrary to Horton's assertions on appeal, his receipt of the stock sooner than originally contemplated was consideration sufficient to support

the July agreement and to constitute an accord and satisfaction with regard to the buy-sell features of the May agreement. Any benefit accruing to a promisor, and any loss, detriment, or disadvantage undergone by a promisee, is sufficient consideration. See *Pepsi Cola Bottling Co. of Dothan v. First Nat. Bank of Columbus*, 248 Ga. 114 (281 SE2d 579) (1981).

Since the uncontradicted evidence establishes that an accord and satisfaction was reached, summary judgment was an appropriate vehicle for determination of that issue, and the trial court's ruling was not erroneous. *Chrietzberg v. Kristopher Woods, Ltd.*, 162 Ga. App. 517 (292 SE2d 100) (1982). Thus, the buy-sell provisions of the May agreement are no longer viable and cannot serve as a basis of recovery by Horton.

4. Our rulings with regard to the issues of mutual departure and accord and satisfaction do not encompass the May agreement in its entirety. Not all of the provisions of the May agreement were affected by the mutual departure of the parties with regard to certain of its terms. *Southwest Plaster &c. Co. v. R. S. Armstrong & Bros. Co.*, supra. Nor were all of its provisions eclipsed by the accord and satisfaction with regard to the buy-sell arrangement. *State Farm Fire &c. Co. v. Fordham*, 148 Ga. App. 48 (250 SE2d 843) (1978). The binding effect of the remaining aspects of the May agreement is a matter for adjudication upon the jury's determination of whether that document is an enforceable contract.

5. When Horton's employment with CMC was terminated, appellees sought to enforce the provisions of the July buy-sell agreement. However, Horton refused to honor appellees' tender offer, and he retained his stock certificates. Thereafter, appellees paid into the registry of the court the purchase price of the stock. The trial court ruled that Horton's refusal to sell his stock back to the corporation was wrongful, and that Horton's status as a CMC shareholder ended on the date upon which appellees tendered the price of the stock to Horton in accordance with the July agreement. Accordingly, the trial court ruled that Horton lacked the requisite standing to bring a shareholder's derivative action. See OCGA § 14-2-123. Horton enumerates this ruling as error.

Horton contends that he is and was a CMC shareholder at all times relevant to the instant lawsuit. His position is predicated upon the holding of *Easterby v. Southern G-F Co.*, 181 Ga. 405 (182 SE 508) (1935). In that case, after two shareholders of a corporation had entered into an agreement to sell their stock, they instituted a derivative action. The court held that the two did have standing to bring such a suit because the contract of sale was executory. The agreement to sell was contingent upon the payment of the purchase price in installments, and the full price had never been paid. Thus, the court

found that the language of the contract indicated that no present sale was intended. Furthermore, the defendants in *Easterby* admitted in their answer that the two plaintiffs were shareholders of the corporation.

No such admission of Horton's status has been made in the instant case. Additionally, although the July agreement permits the price of the stock to be paid in installments, there is nothing in the language of the contract to suggest that the sale is subject to any contingencies whatsoever. In the case at bar, Horton breached his agreement to resell his stock to the corporation. But for that breach, the sale of the stock would have been completed in accordance with the July agreement prior to the filing of this lawsuit. The trial court did not err in ruling that the sale was consummated upon the corporation's tender of the first installment of the purchase price to Horton, and that Horton thus had no standing to bring a shareholder's derivative action.

6. Horton also enumerates as error the denial of his motion for summary judgment with regard to appellees' claim pursuant to OCGA § 14-2-123 (f) for expenses incurred in defense of the lawsuit. Since Horton lacked standing to bring a derivative action, it cannot be said as a matter of law that he instituted the suit with reasonable cause. Thus, the trial court did not err in denying Horton's motion as to appellees' claim for expenses.

7. Appellees counterclaimed against Horton to recover damages for alleged misdeeds and for breach of his fiduciary duties as officer and director of CMC. Horton moved for summary judgment with regard to this counterclaim. He enumerates the denial of that motion as error.

Although there was evidence that Horton performed some aspects of his job properly, there was also evidence that he had attempted to subvert some of CMC's business dealings and to hire away one of CMC's employees. Since the evidence as to the propriety of Horton's conduct was in conflict, the trial court did not err in denying summary judgment on this claim. *Boats for Sail, Inc. v. Sears*, 158 Ga. App. 74 (279 SE2d 314) (1981).

8. To summarize, we have held that a jury question exists as to the enforceability of the May agreement. However, even if that document is found to be an enforceable contract, certain of its terms have been supplanted under the doctrines of mutual departure and accord and satisfaction. The superseded provisions relate to the amount of Horton's salary, Horton's purchase of shares in the corporation, the valuation of CMC stock, and the stock buy-back plan. As to these latter three particulars, the July agreement and the July letter of intent are controlling. The effect of other aspects of the May agreement remains for jury determination. An additional jury question exists

concerning Horton's alleged breach of his fiduciary duties as officer and director of CMC. As to the shareholder's derivative aspects of the case, we have held that Horton had no standing to bring such an action, and appellees' claim for expenses pursuant to OCGA § 14-2-123 (f) is still pending.

*Judgment affirmed. Quillian, P. J., concurs. Birdsong, J., concurs in the judgment only.*

DECIDED SEPTEMBER 25, 1984.

*Mark V. Spix*, for appellants.
*John W. Gibson, James B. Deal*, for appellees.