## 1044

ORPHAN AID SOCIETY, an Eleemosynary Corporation, Appellant v. Deborah R. JENKINS, First Pyramid Life Insurance Company of America, a Corporation organized and existing under the laws of Arkansas, James C. Odom, and R. Irby Joye, Sr., Respondents.

(362 S. E. (2d) 885)

Court of Appeals

*Edward D. Buckley* and *Edward D. Buckley, Jr.,* of *Bailey & Buckley,* Charleston, *for appellant.*

*W. Jefferson Leath, Jr., William Bobo, Jr.,* of *Young, Clement, Rivers & Tisdale,* Charleston, and *Reese I. Joye, Jr.,* North Charleston, *for respondents.*

Heard Oct. 13, 1987.

Decided Nov. 23, 1987.

SANDERS, Chief Judge:

Appellant Orphan Aid Society brought this action to foreclose a mortgage given to it by respondent Deborah R. Jenkins. Based on a subordination signed by the president of the Society, the Circuit Court ruled that a mortgage which Ms. Jenkins subsequently gave to respondent First Pyramid Life Insurance Company has priority over the mortgage being foreclosed. (Respondents James C. Odom and R. Irby Joye, Sr. are lienholders, without dispute junior to the liens of both the Society and First Pyramid.) The Society appeals. We reverse and remand.

The dispositive issue presented on appeal is whether the evidence supports the finding of the Circuit Court that the president of the Society had the authority, either actual or apparent, to sign the subordination.

This is an action in equity. *See Continental Mortgage Investors v. Quail Run Associates,* 280 S. C. 409, 312 S. E. (2d) 272 (Ct. App. 1984) (an action for the foreclosure of a mortgage is an action in equity). "On appeal of an action in equity tried by a judge alone without a reference, this Court has jurisdiction to find facts in accordance with its own view of the preponderance of the evidence." *Crosby v. Protective Life Insurance Co.,* 293 S. C. 203, 206, 359 S. E. (2d) 298, 300 (Ct. App. 1987).

The evidence in this case may be fairly summarized as follows.

Orphan Aid Society was established to operate an orphanage. Its constitution provides that "the entire control and management of the Society is vested in the Board of Managers." A Charleston middle school principal serves as

the president of the Society. The duties of the president, as specified by the by-laws of the Society, include a number of specific activities to be carried on at the orphanage but do not include any duties in connection with either the real estate of the Society or any mortgage indebtedness owed to the Society.

Ms. Jenkins is a real estate agent who also buys and sells real estate for herself. She expressed an interest to the president of the Society in purchasing an apartment complex which the Society owned. The president testified that "I made it very clear to her that I had no powers of my own, but I would certainly take it before the Board of Managers, and if they thought well of it, I would ask them to invite her to come before the Board and explain in detail her proposition." Ms. Jenkins appeared before the Board on at least two occasions in connection with her proposal to buy the property. Eventually a sale of the property was approved by the Board, and a contract of sale was entered into between the Society and Ms. Jenkins. The president signed the contract for the Society, having been specifically authorized to do so by the Board.

The contract of sale provided, among other things, for Ms. Jenkins to give the Society a purchase money mortgage in the amount of $165,000 and for the Society "to subordinate [the] mortgage." The Society deeded the property to Ms. Jenkins. She gave the purchase money mortgage to the Society. The president of the Society signed a subordination of its mortgage to a mortgage subsequently given by Ms. Jenkins to Southern Bank & Trust Co. in the amount of $150,000.

Ms. Jenkins thereafter presented the president of the Society with two further subordinations which he also signed. The first was a subordination of the mortgage of the Society to a mortgage of First Maryland Savings and Loan, Inc. in the amount of $185,000. (This mortgage was later satisfied.) The second was a subordination of the mortgage of the Society to the mortgage of First Pyramid in the amount of $300,000. This is the mortgage which remains a lien against the property.

Both of these subordinations were signed by the president of the Society at the Charleston middle school where he was the principal. He testified he signed them because:

I was misled that Ms. Jenkins was taking the documents straight to [the lawyer for the Society]. I felt secure in that manner, because [the lawyer] would review it, and if he approved it, he would bring the matter back to the Board. When he did not, then I just assumed that it didn't go through.

A member of the Board of Managers testified "that the initial transaction [with Ms. Jenkins], and that only initial transaction, was approved by the Board."

The lawyer who closed the loans on the property testified he was unaware of any limitations on the authority of the president of the Society to deal with the property, but when asked whether he "require[d] a corporate authorization for the execution [of a subordination]," he replied, "No, sir, I do not."

Based on this evidence, we find that the president of the Society did not have either actual or apparent authority to sign the subordination of its mortgage to the mortgage of First Pyramid.

"A party asserting agency as a basis of liability must prove the existence of the agency, and the agency must be clearly established by the facts." *McCall v. Finley*, 362 S. E. (2d) 26 (S. C. Ct. App. 1987). "It is the duty of one dealing with an agent to use due care to ascertain the scope of the agent's authority." *Id.*

It is clear that the president of the Society did not have the actual authority to sign the subordination in issue. (As a matter of fact, the Board had not even given him the authority to sign checks in any amount, much less the authority to sign a subordination of a mortgage in the amount of $165,000.)

"The doctrine of apparent authority provides that the principal is bound by the acts of its agent when it has placed the agent in such a position that persons of ordinary prudence, reasonably knowledgeable with business usages and customs, are led to believe the agent has certain authority and they in turn deal with the agent based on that assumption." *Chambers of South Carolina, Inc. v. Entrepreneur, Inc.*, 292 S. C. 97, 100, 354 S. E. (2d) 921, 923 (Ct. App. 1987). Thus, the concept of apparent authority depends upon manifestations by the principal to a third party and the reasonable belief by the third party that the agent is autho-

rized to bind the principal. *Beasley v. Kerr-McGee Chemical Corporation*, 273 S. C. 523, 257 S. E. (2d) 726 (1979). The authority of an officer of a corporation is not inherent in his title or position. 6 Z. Cavitch, *Business Organizations* § 128.02 at 128-23 (1987); *see, e.g., Computer Maintenance Corp. v. Tilley*, 172 Ga. App. 220, 322 S. E. (2d) 533 (1984) (a president of a corporation does not, by virtue of his office alone, have the authority to contract on its behalf); *Brand v. Lowther*, 168 W. Va. 726, 735, 285 S. E. (2d) 474, 481 (1981) ("There is no inherent authority in the president of a corporation to execute contracts on its behalf, especially where the contract is unusual or relates to transactions not constituting the usual business of the corporation."); *Horowitz v. State Street Trust Co.*, 283 Mass. 53, 59, 186 N. E. 74, 77 (1933) ("The directors, and not the president, have the powers of the corporation, and the president has no implied authority as such to act as the agent of the corporation, but, like other agents, he must derive his power from the board of directors or from the corporation.").

There is no evidence in the instant case of any manifestations by the Society that its president had the authority to sign the subordination in issue. In finding that the president of the Society had the apparent authority to do so, the Circuit Court placed significance on the fact that he never told the lawyer who closed the loans he had no such authority. However, it is undisputed that the president dealt with this lawyer only in connection with the first loan closing, not in connection with the closings involving the subsequent subordinations. Moreover, apparent authority must be established based upon manifestations by the principal, not the agent. Therefore, whatever the president of the Society may have done or not done is of no consequence. Indeed, one who has bought the Brooklyn Bridge cannot overcome the title of the true owner, no matter how persuasive the salesman may have been.

For these reasons, we reverse the part of the order of the Circuit Court which ruled that the mortgage given to First Pyramid has priority over the mortgage of the Society, and remand the case for disposition consistent with this opinion.

Reversed and remanded.

GARDNER, and GOOLSBY, JJ., concur.