1849

PEE DEE NURSING HOME, INC., Appellant v.
FLORENCE GENERAL HOSPITAL, Respondent.
(419 S.E. (2d) 834)

Court of Appeals

*Charles B. Baxley* and *Bruce A. Flora,* both of *Baxley, Pratt & Wells,* Lugoff, *for appellant.*

*Joel H. Smith, Julie Jeffords-Moose* and *Stuart M. Andrews,* all of *Nelson, Mullins, Riley & Scarborough,* Columbia, *for respondent.*

Heard May 4, 1992.

Decided July 13, 1992.

SHAW, Judge:

Appellant, Pee Dee Nursing Home, Inc., sued respondent, Florence General Hospital, seeking specific performance of an agreement regarding the transfer of nursing home beds. Following a bench trial, the trial judge found the hospital's administrator had neither actual nor apparent authority to enter the agreement and therefore found the agreement invalid and unenforceable. The nursing home appeals. We affirm.

The only issues before us on appeal are whether the trial judge erred in finding the administrator had no actual authority to enter the agreement and finding he had no apparent authority to enter the agreement.

The record reveals the following. In early 1987, Carl G. Kretcshmar and two partners became interested in the purchase of Faith Nursing Home, a 148-bed nursing home facility in Florence. Apparently, the hospital became aware of the likely sale to the partners, known as CMK Associates, and approached CMK regarding the purchase of the franchise to 44 of the 148 beds at Faith Nursing Home. On May 4, 1987, the hospital entered an agreement with CMK providing for the transfer of 44 beds to the hospital for the sum of $350,000. This agreement was contingent upon CMK acquiring Faith Nursing Home. The administrator and president of the hospital at that time, Fred Schilling, was specifically authorized by the hospital board to execute this agreement.[1] Effective July 1, 1987, CMK acquired the real estate of Faith Nursing Home and it was operated as Pee Dee Nursing Home, Inc., with Kretschmar serving as president and chief operating officer.

In November 1987, the hospital filed an application for a certificate of need with the South Carolina Department of Health and Environmental Control seeking approval of the

transfer of the 44 nursing home beds to the hospital campus. This application was subsequently approved. Initially, the hospital planned to build a separate unit on the campus to house the 44 nursing beds and still make use of the existing hospital laundry and dining facilities. However, over the course of time, the hospital adopted a plan to use existing hospital space to put 19 of the 44 nursing beds in service with construction of the remaining 25 beds to take place at a later date. Around June of 1989, Kretschmar became aware of these plans and requested a meeting with DHEC to express his objection. Kretschmar stated that the transfer of only 19 beds with some future transfer of the remaining 25 would have a significant negative financial impact on the nursing home. At a June 1989 meeting with DHEC officials and the hospital administrator, Kretschmar indicated he opposed any effort to transfer only 19 beds at that time and would appeal any decision by DHEC permitting this modification to the certificate of need. The meeting led to discussions out of which emerged the challenged agreement between the nursing home and the hospital. The agreement, dated August 16, 1989 is signed by Kretschmar and the hospital administrator, Schilling, and purports to transfer the 25 beds back to the nursing home by means of letting the certificate of need expire. There is no provision for the payment of money to the hospital for the 25 beds. Testimony indicated the value of the 25 beds was approximately $200,000.

The nursing home first contends the trial judge erred in finding the administrator did not have actual authority to negotiate and enter the August 16, 1989 agreement. It argues the hospital's by-laws implicitly gave the administrator this actual authority. We disagree. While Article II, Section 2 of the by-laws allows for delegation of authority, it specifically provides that the administrative powers are vested in the governing board " which shall have charge, control and management of the property, affairs and funds of the hospital." Article V, Section 1 provides for the appointment of an executive office who "shall be given the necessary authority and responsibility to operate the hospital in all its activities and departments, subject only to such policies as may be issued by the Governing Board or by any of its committees to which it has delegated power for such action." Section 3 of the

same article is a list of enumerated responsibilities and authority of the appointed executive officer which includes only matters that are clearly administrative. It suggests no authority to dispose of assets belonging to the hospital.

There is no evidence that the board delegated authority to Schilling to dispose of hospital assets. Further, while Schilling received specific board approval to negotiate the May 4, 1987 agreement, no such authority appears for the August 16, 1989 agreement as evidenced by the hospital board minutes. To the contrary, the day before the agreement was entered, Schilling appeared at a board meeting, but the minutes reflect no mention of negotiations to return the 25 beds. Further, at an April 18, 1989 board meeting, the board declined to approval a recommendation by Schilling to sell of 25 of the nursing home beds. Finally, board members testified that Schilling had no authority to contract for the transfer of the 25 beds without board approval, that he had no authority to transfer a $200,000 asset without board approval, and that at the October 20, 1987 board meeting, Schilling was instructed to have an attorney or a board committee monitor future contractual obligations as a result of the board's displeasure over his handling of the May 4, 1987 agreement. Based on the foregoing, it is clear that Schilling did not have actual authority to enter into the August 16, 1989 agreement.

The nursing home further asserts the trial judge erred in finding the administrator did not have apparent authority to enter the August 16, 1989 agreement. In making this argument, the nursing home relies on Schilling's title of president and administrator of the hospital and the involvement of Schilling in prior dealings between the parties and representations made by him. We find the case of *Orphan Aid Society v. Jenkins*, 294 S.C. 106, 362 S.E. (2d) 885 (Ct. App. 1987) sufficiently addresses this issue and quote the pertinent law from that case.

"The doctrine of apparent authority provides that the principal is bound by the acts of its agent when it has placed the agent in such a position that persons of ordinary prudence, reasonably knowledgeable with business usages and customs, are led to believe the agent has certain authority and they in turn deal with the agent based

on that assumption." *Chambers of South Carolina, Inc. v. Entrepreneur, Inc.*, 292 S.C. 97, 100, 354 S.E. (2d) 921, 923 (Ct. App. 1987). Thus, the concept of apparent authority depends upon manifestations by the principal to a third party and the reasonable belief by the third party that the agent is authorized to bind the principal. *Beasley v. Kerr-McGee Chemical Corporation*, 273 S.C. 523, 257 S.E. (2d) 726 (1979). The authority of an officer of a corporation is not inherent in his title or position. 6 Z. Cavitch, *Business Organizations* § 128.02 at 128-23 (1987); *see, e.g., Computer Maintenance Corp. v. Tilley*, 172 Ga. App. 220, 322 S.E. (2d) 533 (1984) (a president of a corporation does not, by virtue of his office alone, have the authority to contract on its behalf); *Brand v. Lowther*, 168 W. Va. 726, 735, 285 S.E. (2d) 474, 481 (1981) ("There is no inherent authority in the president of a corporation to execute contracts on its behalf, especially where the contract is unusual or relates to transactions not constituting the usual business of the corporation."); *Horowitz v. State Street Trust Co.*, 283 Mass. 53, 59, 186 N.E. 74, 77 (1933) ("The directors, and not the president, have the powers of the corporation, and the president has no implied authority as such to act as the agent of the corporation, but, like other agents, he must derive his power from the board of directors or from the corporation.").

As in the *Orphan Aid Society* case, there is no evidence of any manifestations by the board that the administrator had the authority to enter such a contract. There is no evidence the nursing home was "led to believe" Schilling had this authority, for his title, alone, is insufficient to show apparent authority. This is especially true in light of the unusual nature of the transaction involved; one not associated with the ordinary and day to day administration of a hospital. Further, the fact that Schilling was involved in prior negotiations with the nursing home on behalf of the hospital does not show Schilling had apparent authority to enter into the August 16, 1989 agreement, for the previous transaction was specifically authorized by the board. To accept the nursing home's argument would be to find apparent authority whenever the parties had previously negotiated business, through one of the parties' agent, regardless of

whether the agent was required to obtain the principal's approval. In other words, a principal would automatically create apparent authority in its agent to enter into contracts which would otherwise require the principal's approval by the mere fact that the agent dealt with the third party on a similar matter in the past. Certainly, in such a situation, the principal should be able to continue the requirement of its approval and not destroy its shield from apparent authority.

Neither do we accept the argument that the hospital failed to put the nursing home on notice that Schilling lacked the authority to enter such a contract and this inaction amounted to a representation that Schilling had the necessary authority. A party asserting agency as a basis of liability must prove the existence of the agency, clearly established by the facts, and it is the duty of one dealing with an agent to use due care to ascertain the scope of the agent's authority. *McCall v. Finley*, 294 S.C. 1, 362 S.E. (2d) 26 (Ct. App. 1987).

Based on the foregoing, we find that the administrator had neither actual nor apparent authority to enter into the contract in question. Accordingly, the order below is affirmed.

Affirmed.

GARDNER and BELL, JJ., concur.