14828

JUSTUS v. UNIVERSAL CREDIT CO.

(1 S. E. (2d), 508)

488

*Mr. Norbert A. Theodore,* for appellant,

*Mr. Clarke W. McCants,* for respondent,

February 28, 1939.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

This cause of action grows out of the repossession of an automobile from appellant by respondent. In Paragraph two of the complaint it is alleged that on July 29, 1937, the appellant purchased a 1937 model Ford automobile for the sum of $750.00; that in order to secure the balance of the purchase price, namely, $500.00, the appellant executed a chattel mortgage payable in three installments of $198.50 each, due three, six and nine months from July 24, 1937, said chattel mortgage being sold to the respondent, Universal Credit Company.

Paragraphs three, four and, so much of Paragraph five as is applicable, of the complaint are as follows:

"3. That on Sunday, February 27th, 1938, at about 10:30 A. M., several representatives of the defendant, Universal Credit Company, acting for and in behalf of said defendant, came to the home of this plaintiff in Lexington County and demanded possession of the said Ford Tudor Sedan and that the plaintiff advised the defendant, through such representatives and agents that he would pay them in full on the following Tuesday, namely, March 1st, 1938. The defendant acting through said agents refused to wait until such time and demanded immediate possession of the said automobile.

"4. The plaintiff informed the defendant through said agents that they could not get the automobile and that they better not try to take it, and that if they did they would have to resort to the legal proceedings prescribed by law, namely, a claim and delivery. The defendant further advised the defendant's agents that if they attempted to take possession of the automobile without legal proceedings they would have to take it from him by force.

"5. That the agents of the defendant, acting for and in behalf of the defendant, then proceeded down the road and some miles distance, saw the brother of this plaintiff in said Ford automobile and stopped him on the highway and told him, the brother of the plaintiff, that the plaintiff had told them to get the automobile, and the brother of the plaintiff protested and said that he had several chattels in the car that he wished to take home. Thereupon one of the agents of the defendant got into the automobile with the brother of the plaintiff and went to the home of the plaintiff, the agents of the defendant knowing that the plaintiff would not be there and hurriedly emptied the said Ford Tudor Sedan of the chattels that were in said automobile * * * ."

It is further alleged in the complaint that the taking was illegal and unlawful and accomplished through "subterfuge and it breached the tranquillity which this plaintiff enjoyed in the right to the possession of his property;" that the re-

possession was over the protest of the plaintiff and without claim and delivery proceedings as demanded by appellant.

The complaint also contains allegations pertaining to the alleged unlawful repossession by the respondent of a radio attached to the automobile, which allegations, the evidence in support thereof, and the exceptions arising therefrom, are not recited or discussed herein, in view of the ultimate decision of this Court in this appeal.

The answer of respondent alleges the purchase of the conditional sales contract from the seller of the automobile and pled the terms and provisions thereof as a defense to appellant's cause of action. The position of the respondent is briefly stated in Paragraph four of the answer as follows: "4. Further answering the said complaint, the defendant alleges that it peaceably acquired possession of the automobile described in the complaint and all equipment and accessories attached or added thereto in good faith, the same being voluntarily surrendered to an agent of the defendant, and by reason of the terms of the said conditional sales contract having been broken when the plaintiff failed to pay the balance of the installment due October 24, 1937, and the installment due January 24, 1938."

The respondent moved to require the appellant to elect the cause of action upon which he was proceeding. The Court ruled that there was but one cause of action stated—one for trespass, which ruling was acquiesced in by appellant.

At the close of appellant's testimony the respondent made a motion for a nonsuit "upon the ground that there is only one inference to be drawn from the testimony; and that is, that if the car in question was taken by the defendant's agents, the same was procured peaceably and in good faith."

The motion was granted, the trial Judge resting his decision on the case of *Willis v. Whittle*, 82 S. C., 500, 64 S. E., 410. A motion for a new trial was refused and an appeal taken from the action of the trial Judge in granting a

nonsuit and refusing a new trial. The discussion of the exceptions of appellant will be treated as if a motion for a new trial was not made, since the same errors are alleged in refusing to grant a new trial as in granting respondent's motion for a nonsuit.

The acts that culminated in the institution of this action occurred on Sunday, February 27, 1938. It is not denied that on this date appellant had defaulted in his payments under the conditional sales contract having paid to respondent, since the execution and delivery of the instrument, only $53.50. The respondent was then entitled to payment in full of the balance remaining due under the contract, resort being had to the acceleration clause therein, or to the possession of the security, namely, the automobile. However, in the event there is a failure to pay the amount due, a mortgagee can secure possession of the security only in a peaceable manner, or in the manner and means provided by law. A general statement on this subject is to be found in the recent case of *Childers v. Judson Mills Store Co. et al.,* (S. C.), 200 S. E., 770, 773, from which we quote:

"We discuss first the exceptions alleging error in the trial Judge's refusal to grant a nonsuit or directed verdict as against both appellants or either appellant. Repossession of chattels, without institution of legal proceedings, after default in the terms and conditions of conditional sales contracts, has been the subject-matter of appeal before this Court in several cases, a few of these cases being * * * *Willis v. Whittle,* 82 S. C., 500, 64 S. E., 410. * * *

"The guiding principles of law in instances of this kind are clearly enunciated in *Willis v. Whittle, supra,* from which we quote:

" 'It is well settled that, after condition broken, the legal title to mortgaged chattels vests in the mortgagee. The right of the mortgagee to seize mortgaged chattels after condition broken is a license coupled with an interest, which cannot be revoked by the mortgagor. It is a part of the considera-

tion of the mortgage, and to allow the mortgagor to revoke it would be a fraud upon the rights of the mortgagee, and would very much impair the value of chattel mortgages as securities. The right to seize carries with it by necessary implication the right to do whatever is reasonably necessary to make the seizure, including the right to peaceably enter upon the premises of the mortgagor.

" 'There is one restriction, however, which the law imposes upon this right. It must be exercised without provoking a breach of the peace; and, if the mortgagee finds that he cannot get possession without committing a breach, he must stay his hand, and resort to the law, for the preservation of the public peace is of more importance to society than the right of the owner of a chattel to get possession of it. *Satterwhite v. Kennedy*, 3 Strob. 457; *Harris v. Marco*, 16 S. C., (575) 578.' "

We find it necessary to pass upon but one issue raised by the exceptions, that being, may a mortgagee, after condition broken in the terms of a chattel mortgage, seize the security without claim and delivery proceedings, over the protests of the mortgagor, without having in his possession the chattel mortgage and when the mortgagor offered to pay the full amount due, if the chattel mortgage was produced?

Since the automobile was repossessed without claim and delivery proceedings we do not apprehend that any real issue is presented by reason of the fact that repossession occurred on a Sunday. The seizure of chattels, after condition broken in a chattel mortgage, and over the protests of the mortgagor, on Sunday, does not *ipso facto* give rise to a cause of action for an invasion of mortgagor's rights, unless as on any day of the week, there is a breach of the peace. The only distinction that can be drawn as to Sunday is that laid down in Section 3523, Vol. 2, Code of Laws of 1932, wherein it is provided that a civil process such as claim and delivery shall not be served on Sunday. We briefly mention this phase of the case as some of appellant's ex-

ceptions charge error in granting a nonsuit by reason of these acts occurring on Sunday. We will, however, remark in passing that the repossession of chattels on the Sabbath day does not commend itself to this Court.

Inasmuch as the case is to return to the lower Court for a new trial, we refer to only so much of the testimony as is necessary, and as briefly as possible.

On February 27, 1938, two representatives of the respondent, Mr. Thrash and Mr. Davis, called at the home of appellant and demanded the car or the balance of the money due under the conditional sales contract. After some conversation between appellant and Thrash and Davis concerning the intended seizure of the automobile, appellant asked the agents if either of them had in his possession the chattel mortgage. Upon receiving a negative answer he instructed the representatives to obtain the chattel mortgage and he would pay the same. The seizure occurred later on during the day, in the absence of appellant, but in the presence of appellant's two brothers, H. W. Justus and William Justus, the automobile having been loaned to William Justus and was in his possession at the time of the seizure. At that time, H. W. Justus, who was present when Thrash and Davis talked with appellant, tendered to the representatives the balance due on the automobile, provided they would get the chattel mortgage. Thrash and Davis seized the car without having the lien instrument in their possession or without making an effort to secure same, the seizure being without the consent and over the protest of appellant.

The evidence just narrated is the appellant's evidence and this being an appeal from an order of nonsuit the evidence must be construed most favorable to appellant.

As hereinbefore stated, the trial Judge granted the nonsuit upon the doctrine of the case of *Willis v. Whittle, supra,* holding that the instant case is on "all-fours" with the *Whittle case*. It is true in this case the repossession

was against the protest of the mortgagor, with the demand that repossession be had through claim and delivery proceedings, and, as in the *Whittle case,* the repossession occurred in the absence of the mortgagor without a breach of the peace, such that if there were nothing else to consider, this case would be entirely governed by the *Whittle case.* However, in the instant case a tender of the amount due was made, provided the chattel mortgage was produced for cancellation. The representatives of respondent w o u l d, of course, have been entitled to a reasonable time within which to have produced the note and chattel mortgage, and if tender had been withdrawn, then repossession would have been in order. *Spears v. Fields,* 72 S. C., 395, 52 S. E., 44. The lien instrument in this case is a negotiable instrument, therefore it was the duty of appellant, for his own protection, before paying the amount owing, to require the production of the note and chattel mortgage.

We refer to the case of *Union National Bank of Columbia v. Cook et al.,* 110 S. C., 99, 96 S. E., 484. 487, wherein the following quotation from 1 Jones on Mortgages, Section 956, is cited with approval: " 'On making payment upon a mortgage, the debtor should always require the production of the note or bond secured by it, otherwise it may turn out that the evidence of the debt had been assigned.' "

In point also is the language of this Court in *Bacot v. South Carolina Loan & Trust Co.,* 132 S. C., 340, 127 S. E., 562, 564: " *   *   *   But in conformity to settled principles of the law, grounded in reason and sound public policy, among others, that it is the duty of one dealing with an agent to use due care to ascertain the scope of the agent's authority *(Colt v. Britt* [129 S. C., 226], 123 S. E., 845), and that it is 'the duty of the debtor  *   *   * to see that the person to whom he pays it is in possession of the security.'  *   *   * ."

From *Sparks v. Green,* 85 S. C., 109, 67 S. E., 230, 231: " *   *   *   If the plaintiff really tendered all that was due

on the papers which he demanded, he had a right to demand the return of such papers. *Salinas v. Ellis*, 26 S. C., 337, 2 S. E., 121, *Spears v. Fields*, 72 S. C., 395, 52 S. E., 44. * * * ."

When production of the note and mortgage was demanded of respondent's representatives by appellant and tender of the amount due made, provided the instruments be returned to appellant, respondent's agents had no right to seize the car without compliance with appellant's lawful demand. Assuming the note and mortgage had been produced and appellant failed to pay the amount due and owing, the respondent would have then been in a position to proceed with repossession in a lawful manner.

One of appellant's exceptions raises the question as to how far an individual who represents himself to be an agent of the mortgagee to secure possession of mortgaged chattels may go without having some evidence in his possession to show that he represents the owner and holder of the mortgage. This question is not before this Court for decision in the instant case, for the appellant's evidence shows and is based upon the fact that Thrash and Davis were respondent's agents for the purpose of affecting collection of the money due or repossession of the automobile.

The trial Court was in error in granting a nonsuit and the judgment of this Court is reversed, and a new trial granted.

Messrs. Justices Bonham and Fishburne concur.

Mr. Chief Justice Stabler concurs in result.

Mr. Justice Carter did not participate on account of illness.