## 21030

Charles Arthur BEASLEY, Respondent, v. KERR-McGEE CHEMICAL CORPORATION, INC., Appellant.

(257 S. E. (2d) 726)

*Stephen G. Morrison,* of *Nelson, Mullins, Grier & Scarborough,* Columbia, *for appellant.*

*Jacob H. Jennings,* of *Jennings & Jennings,* Bishopville, *for respondent.*

August 15, 1979.

RHODES, Justice:

Respondent Charles Arthur Beasley instituted this products liability suit claiming that Kerr-McGee Chemical Corporation, Inc. (Kerr-McGee) was liable for breach of implied warranty with respect to the sale of cotton seed. The jury returned a favorable verdict for respondent and Kerr-McGee now appeals. We affirm.

On April 1, 1974, Beasley purchased a quantity of Pennington Stoneville 213 cotton seed, along with several other items, from the "Kerr-McGee Field Office," a separate portion of a larger rural general store known as "Houser's Supermarket." Both business entities, which are divided by a partitional wall and door, are operated by John Houser, Jr.

Beasley had an established line of credit with Kerr-McGee, and Houser charged all of the chosen items, including the cotton seed in question, to Beasley's account with Kerr-McGee. Subsequently, a bill from Kerr-McGee was

mailed to respondent covering the total price of the April 1 purchase, which he promptly paid. According to respondent's allegations, the cotton seed failed to properly germinate. He then commenced this action charging that Kerr-McGee had breached an implied warranty of merchantability in selling him the defective seed.

The theory of liability advanced by respondent was that Houser was an agent of Kerr-McGee with the authority to sell the Stoneville 213 seed on its behalf and that respondent reasonably assumed Kerr-McGee would be responsible for any defects, particularly since it had ratified the transaction by receiving the proceeds therefrom. Kerr-McGee argues that its contractual arrangement with Houser rendered the latter a warehouseman and immunized Kerr-McGee from responsibility for the defective seed which it asserts were sold by Houser without the corporation's approval.

It is well established that the terms of a contractual agreement are not conclusive in determining the association between two parties where there is evidence outside the contract establishing an agency relationship. *Hubbard v. Rowe,* 192 S. C. 12, 5 S. E. (2d) 187 (1939). *See also Thompson v. Ford Motor Co.,* 200 S. C. 393, 21 S. E. (2d) 34 (1942). "It is not the descriptive name employed, but the nature of the business and the extent of authority given and exercised, which is determinative." *Jones v. General Motors Corporation,* 197 S. C. 129, 14 S. E. (2d) 628, 631 (1941).

The concept of apparent authority or agency by estoppel depends upon the manifestations by the alleged principal to a third party and the reasonable belief by the third party that the alleged agent is authorized to bind the principal. *Gizzi v. Texaco, Inc.,* 437 F. (2d) 308 (3rd Cir. 1971); Restatement (Second) Agency §§ 8, 8B, 27 (1957). While the written contract between Kerr-McGee and Houser was denominated a "warehousing agreement," we think it clear from the evidence that Kerr-Mc-

Gee not only vested Houser with authority beyond that of a mere warehouseman, but also cloaked Houser with the apparent authority to negotiate the present sale from which an implied warranty would flow.

Regarding his arrangement with Kerr-McGee, Houser testified that, for a certain percentage of the gross profit, he handled Kerr-McGee products as well as products manufactured by other companies which Kerr-McGee marketed through him for resale. In fact, he stated that of all the products he handled for Kerr-McGee, at least eighty (80%) percent were manufactured or labeled by a name other than Kerr-McGee.

Houser explained that he had the discretionary authority to purchase goods in the open market for resale through Kerr-McGee if he thought the products would sell. His testimony indicated that he had previously exercised this discretionary authority by selling products on behalf of Kerr-McGee without first attaining their formal approval through a purchase order, which actions on his part had not been previously questioned by Kerr-McGee, but, on the contrary, the corporation had acquiesced in and retained all profits therefrom.

The Stoneville 213 seed in question was processed by Pennington and the package containing the seed accordingly bore the Pennington label. Houser ordered the seed directly from Pennington and placed it in the "Kerr-McGee Field Office" for resale. While admitting that at the time of the sale he had not transferred title to the seed to Kerr-McGee, Houser stated that he could have done so by simply calling Kerr-McGee and getting a purchase order from them.

The circumstances of the transaction are supportive of the conclusion that the sale was from Kerr-McGee to Beasley. At the time the purchase was consummated, Houser issued a printed Kerr-McGee delivery ticket to Beasley for the seed and other items, at the bottom of which Houser's sig-

nature appeared over the printed words "Kerr-McGee Chemical Corp." This delivery ticket was then sent to Kerr-McGee which later billed Beasley directly for the Stoneville 213 seed. Kerr-McGee then received the proceeds in the form of Beasley's check which was made out to the corporate defendant.

Apparent authority is such power as a principal holds his agent out as possessing or permits him to exercise under such circumstances as to preclude a denial of its existence. 2A C. J. S. Agency § 157 (1972); *Sells Lumber & Manufacturing Co. v. Carr Lumber Co.*, 179 S. C. 407, 184 S. E. 674 (1936). In order for a third party to recover against the principal based upon this theory, it must be shown that he reasonably relied on the indicia of authority originated by the principal and such reliance must have effected a change of position by the third party. *ZIV Television Programs, Inc. v. Associated Grocers, Inc. of S. C.*, 236 S. C. 448, 114 S. E. (2d) 826 (1960).

To respondent, Houser was Kerr-McGee's "agent" for farm supplies in his community. Beasley was a steady customer of Kerr-McGee, purchasing approximately twenty thousand dollars ($20,000) worth of farm supplies from it annually. According to his testimony, he never considered that he purchased any farm supplies from Houser individually: "I would say everything I ever bought from him was through Kerr-McGee because I charged everything through Kerr-McGee." Nor was respondent remiss in relying upon the purported agency relationship between Kerr-McGee and Houser. Kerr-McGee's own regional representative, through his testimony, referred to Houser as a "commissioned agent for me," and to Kerr-McGee as a "distributor" for various farm supply manufacturers.

In addition, the premises from which the goods were purchased were visibly identified as the "Kerr-McGee Field Office" by an appropriate sign. Kerr-McGee delivery tickets were utilized to acknowledge purchases made by respondent

from the Kerr-McGee outlet. Moreover, Kerr-McGee accepted and retained all proceeds flowing from the transaction in question.

In *Mortgage & Acceptance Corp. v. Stewart,* 142 S. C. 375, 140 S. E. 804 (1927), a finance company had entrusted an auto dealer with collection of its payments on a chattel mortgage, received payments through the dealer, and then attempted to deny the dealer's agency. The court held that the finance company which had received the benefits of the agency by retaining to itself the monies collected for its account by the motor company could not "retain these benefits and deny the very consequences of the agency." In reaching this decision, the *Stewart* court applied the following principle:

" '. . . [I]t is a general rule that, when a principal by any such acts or conduct has knowingly caused or permitted another to appear to be his agent, either generally or for a particular purpose, he will be estopped to deny such agency to the injury of the third persons who have in good faith and in the exercise of reasonable prudence dealt with the agent on the faith of such appearances . . . on the principle that where one of two innocent persons must suffer loss, the loss will fall on him whose conduct brought about the situation.' "

*Id.* 140 S. E. (2d) at 805, *quoting* 2 C. J. 461. *See also, Heil-Quaker v. Swindler,* 255 F. Supp. 445 (D. C. S. C. 1966); *Fochtman v. Clanton's Auto Auction Sales,* 233 S. C. 581, 106 S. E. (2d) 272 (1958). *Accord D. W. L., Inc. v. Goodner-Van Engineering Company,* 373 P. (2d) 38 (Okl. 1962).

Under the facts of the present case, we are of the opinion that the lower court properly submitted the issue of agency to the jury. *See ZIV Television Programs v. Associated Grocers of S. C., supra; Fochtman v. Clanton's Auto Auction Sales, supra.*

Appellant further maintains that there was not a sale or contract of sale upon which a breach of warranty could be postulated because at the time of the transaction Kerr-McGee did not have title to the seed. Kerr-McGee's theory is predicated upon the literal terms of the following U. C. C. provisions:

Unless excluded or modified (§ 36-2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. S. C. Code § 36-2-314(1) (1976).

. . . "Contract for sale" includes both a present sale of goods and a contract to sell goods at a future time. A "sale" consists in the passing of title from the seller to the buyer for a price . . .

S. C. Code § 36-2-106 (1976).

It is appellant's position that inasmuch as title to the seed was in Houser, there was no sale between Beasley and Kerr-McGee as is required to invoke the implied warranty provisions of the U. C. C.. We disagree.

Whether title be in Houser, as a Kerr-McGee agent, or in the corporation itself is of no significant legal consequence. Commentators have aptly noted that "[u]nder the U. C. C. [Art. 2], the location of title is relatively unimportant." Hawkland, A Transactional Guide to the Uniform Commercial Code, § 1.2401 at 143 (1964), *quoted* with approval in *Wilke v. Cummins Diesel Engines,* 252 Md. 611, 250 A. (2d) 886 (1969). As stated in the Official Comment to U. C. C. § 2-101:

The arrangement of [Article II] is in terms of contract for sale and the various steps of its performance. The legal consequences are stated as following directly from the contract and action taken under it without resorting to the idea of when property or title passed or was to pass as being the determining factor.

This comment has been interpreted as signifying the U. C. C.'s most significant departure from the traditional law of sales: the abandonment of the concept of title as a cornerstone upon which much of the remainder of the law depends. *See, e. g.,* 37 St. John's Law Review 178 (1962).

Inasmuch as we have concluded that the evidence was sufficient to establish an agency relationship between Houser and Kerr-McGee, it would follow that Houser, who stands in the position of Kerr-McGee, was empowered to effectuate the present sales transaction on its behalf as required by § 36-2-314.

Appellant further excepts to evidence from a number of witnesses who testified as to their experience with Pennington 213 Stoneville Cotton seed purchased from Houser. Kerr-McGee complains that this testimony was irrelevant in that the plaintiff's attorney failed to lay the proper foundation so as to link the seed purchased by these witnesses with that purchased by Beasley. While the trial judge struck some of this testimony with appropriate instructions to the jury, a portion of it was allowed to remain which appellant asserts was error.

Appellant also contends that testimony regarding results of germination experiments conducted by the S. C. Department of Agriculture was erroneously admitted inasmuch as there was no showing that the conditions under which the experiments were conducted were similar to those involved with respondent's defective seed. The exhibits indicating the results of the experiments were withdrawn from the jury; however, the testimony from the department's witnesses was held admissible.

Appellant's counsel stated at the outset of the trial that the primary defense to be interposed was that of non-liability due to the fact that no sale had occurred between the parties. At trial, no witnesses were presented by appellant to contest the defectiveness of the seed. Assuming without deciding that the testimony which the trial judge allowed

532

to remain was irrelevant, we are of the opinion that such was not prejudicial inasmuch as it was simply cumulative to the uncontradicted testimony of the plaintiff, and the issue to which the objectionable testimony was addressed was not substantially contested in the trial of the case.

Appellant's final contention challenges the trial judge's refusal to grant its motion for a continuance or in the alternative to add additional parties. It is argued that Kerr-McGee could not present an appropriate defense without the benefit of material witnesses from Pennington Grain and Seed, Inc., the processor of the cotton seed in question. It is well settled that a motion for a continuance is addressed to the discretion of the trial judge, and his ruling thereon will not be disturbed unless it is shown that there was an abuse of discretion. *See, e. g., Gavin v. North Carolina Mutual Insurance Co.,* 265 S. C. 206, 217 S. E. (2d) 591 (1975). The trial judge denied the motion on the ground that the defendant had approximately eight months from the filing of the complaint until the trial for preparation of its case, the motion having been made immediately prior to the call of the case for trial. We find no abuse of discretion in such ruling.

Affirmed.

LEWIS, C. J., and LITTLEJOHN, NESS and GREGORY, JJ., concur.