## 23486

Daniel M. GRAVES, Respondent-Appellant v. SERBIN FARMS, INC., Serbin Development Corporation, Jacob Serbin, as Liquidating Trustee, and Jacob Serbin, Defendants, Of whom Serbin Farms, Inc., Serbin Development Corporation, and Jacob Serbin are Appellants-Respondents, and James R. Sexton is a Respondent.

(409 S.E. (2d) 769)

Supreme Court

*J. Lewis Cromer*, Columbia, *for appellants-respondents.*

*Amos A. Workman*, Spartanburg, *for respondent-appellant.*

*John A. Hagins*, Greenville, *for respondent.*

Heard Jan. 22, 1991; Decided Oct. 7, 1991.

Rehearing Denied Oct. 31, 1991.

FINNEY, Justice:

Appellants Serbin Farms, Inc., Serbin Development Corporation, and Jacob Serbin appeal the circuit court's award of judgments to respondents Daniel M. Graves and James R. Sexton. We reverse.

On August 8, 1983, Jacob Serbin, President of Serbin Farms, Inc., and Sexton executed a Farm Management Agreement (FMA) documenting their oral agreement of the preceding March whereby Sexton would manage Serbin's Jalapa, South Carolina, livestock farm. In October of 1983, the FMA was amended to include Sexton's management of a Georgia hog farm which Serbin leased from Gordon Graves.

The duties and responsibilities of the parties set forth in the FMA included the following specifics:

> Sexton was prohibited from performing any duties outside the normal course and scope of his management without first obtaining Serbin's written consent.
> Sexton was to be an independent contractor and not an agent of Serbin Farms. Sexton was required to first obtain Serbin's written approval to incur reasonable expenses necessary to the performance of his duties under the FMA and submit vouchers prior to reimbursement for such expenses.

In the fall of 1983, Sexton and Daniel M. Graves (Graves) made an arrangement under which Graves would finance the purchase of two multis of corn, the equivalent of six railroad carloads. In late December of 1983, approximately $85,000 from Graves was used to pay for the corn, which was delivered to railheads in Jalapa and McCormick, South Carolina. There is a dispute as to disposition of the corn after this point. Contested testimony indicates that at least a portion was initially stored in bins belonging to Serbin. The evidence is in conflict as to the disposition of the corn after being placed in the bins.

According to the record, Serbin had no knowledge of the agreement between Sexton and Graves. Graves testified that he was not aware Sexton was employed by Serbin and thought he was contracting with Sexton independently.

On May 30, 1984, Serbin sent a letter to Sexton terminating the FMA.

Subsequently Serbin became aware of the agreement between Sexton and Graves. Serbin and Graves met for the first time in a conference concerning payment for the corn. Whether or not they arrived at an agreement is in dispute. Thereafter Sexton issued a check for $9,350 to Graves from the Serbin Farms account as partial payment for the corn. Serbin stopped payment on the check, and Sexton submitted a replacement check for $9,350 from his personal account.

On September 6, 1985, Graves instituted an action for conversion against Serbin and Sexton. The complaint was subsequently amended to allow Graves to seek recovery under the additional theories of quantum meruit, unjust enrichment and breach of settlement agreement. Sexton filed a cross-claim against Serbin seeking recovery of the $9,350 he paid Graves.

The jury returned a verdict in favor of Graves for $65,966.51 and in favor of Sexton for $9,350. Serbin's post-trial motions for a new trial, new trial nisi and J.N.O.V. were denied. Sexton's motion for assessment of interest was granted, and the trial court awarded interest in the amount of $5,110.93. The trial judge denied Graves' motion for assessment of interest and reduced Graves' judgment to $56,626.51 by subtracting $9,350 previously paid by Sexton. The trial court assessed costs of $1,117 against Serbin. Serbin appealed.

On appeal, Serbin contends the trial judge erred in allowing testimony of an agency relationship between Serbin and Sexton. Serbin asserts the FMA constitutes the full extent of his relationship with Sexton and that the language contained therein explicitly repudiates any claim or inference of agency. Serbin argues that the admission of evidence to the contrary is violative of the parole evidence rule. We agree.

The parol evidence rule states that "where the terms of a written instrument are unambiguous, clear and explicit, extrinsic evidence of statements . . . made contemporaneously with or prior to its execution are inadmissible to contradict . . . vary or explain its terms. . . ." *Ray v. South Carolina Nat. Bank*, 281 S.C. 170, 171, 314 S.E. (2d) 359, 360 (1984).

Section A, *Retention, Duties and Term*, Paragraph 3 of the FMA states in pertinent part:

> ... Sexton and Serbin Farms further acknowledge and agree that Sexton is not, and shall not be deemed to be, an agent of Serbin Farms, but rather that this Agreement is intended by the parties to create the relationship of independent contractor only.

We find that the FMA clearly and unambiguously defined the relationship between Serbin and Sexton. Hence, extrinsic testimony varying the agreement was inadmissible.

Additionally, Serbin argues that Graves failed to prove a relationship of apparent agency. The elements which must be proven to establish apparent agency are: (1) that the purported principal consciously or impliedly represented another to be his agent; (2) that there was a reliance upon the representation; and (3) that there was a change of position to the relying party's detriment. *Watkins v. Mobile Oil Corporation*, 291 S.C. 62, 352 S.E. (2d) 284 (1986).

The testimony and evidence reflect that prior to and at the time of the transaction, Graves was not aware of any relationship between Serbin and Sexton. Therefore, Graves could not have relied on an apparent agency relationship. We hold that Graves' detrimental change in position was not as a result of such reliance, and his proof fails.

Based upon this record, we conclude that Sexton's arrangement with Graves constituted an activity outside the scope of Sexton's authority. Accordingly, the findings and judgment of the trial court are reversed.

Our holding is based upon the specific facts of this case and is not intended to promulgate a general rule that the existence of a written instrument declaring or disclaiming the relationship of agency may serve as a bar to presenting proof to the contrary.

In view of our disposition of the foregoing issue, we make no determination as to appellant's remaining exceptions.

Remanded.

GREGORY, C.J., and HARWELL, CHANDLER and TOAL, JJ., concur.