490 S.E.2d 608

Thomas GENOVESE and Linda Genovese, Respondents,

v.

Joseph BERGERON and Theresa Bergeron,

of whom Theresa Bergeron is Appellant.

No. 2702.

Court of Appeals of South Carolina.

Submitted June 3, 1997.
Decided July 21, 1997.
Rehearing Denied Sept. 3, 1997.
Certiorari Dismissed Nov. 7, 1997.

568

John P. Qualey, Jr., Hilton Head Island, for appellant.

Otto W. Ferrene, Jr., Hilton Head Island, for respondents.

GOOLSBY, Judge.

Thomas Genovese and Linda Genovese (landlords) brought this action against Theresa Bergeron (tenant) to recover unpaid rent and property damages. The trial court directed a verdict in favor of the landlords and awarded them $10,400 in unpaid rent. The jury awarded the landlords $2,000 for property damage caused by the tenant. The tenant appeals. We affirm in part, reverse in part, and remand.[1]

## FACTS

Beginning on October 1, 1988, the tenant entered into six consecutive one-year leases with the landlords whereby the landlords agreed to rent to the tenant a residence in the Shipyard Plantation on Hilton Head Island. The final lease, which is at issue here, commenced on October 1, 1993, and ended on September 30, 1994, at a monthly rent of $1,300.

Doris Warner managed the property for the landlords throughout the period during which the tenant rented the property. In December 1993, the tenant informed Warner she had been offered employment in New York and she desired to terminate the lease with the landlords. Because the lease required the landlords' permission before the tenant could sublease the property, the tenant requested that Warner ask the landlords whether she could either sublease the prop-

---

1. Because oral argument would not aid the court in resolving the issues, we decide this case without oral argument pursuant to Rule 215, SCACR.

erty or terminate the lease. Warner informed the tenant the landlords did not want her to sublease the property and the landlords were considering selling the property. Warner told the tenant she could vacate the premises. The tenant complied with Warner's request to put her desire to terminate the lease in writing and to indicate she planned to vacate the property.

In January 1994, Warner inspected the property and presented the tenant with an itemized list of damages to the property totaling $1,360. Warner told the tenant that her deposit only covered $1,000 of the damages so the tenant wrote a check to Warner's employer for $369.54.

At trial, the landlords moved for a directed verdict on their unpaid rent claim. In opposition to the landlords' directed verdict motion, the tenant argued there was sufficient evidence for a jury to conclude Warner had the apparent authority to release the tenant from her obligations under the lease. The trial court disagreed and granted the landlords' directed verdict motion, awarding the landlords $10,400 in unpaid rent. The trial court also disagreed with the tenant's contention that the landlords failed to mitigate their damages.

## DISCUSSION

### I.

The tenant argues the trial court erred in directing a verdict on the unpaid rent issue because she presented sufficient evidence of apparent authority to survive a directed verdict motion. We agree.

In deciding whether to grant a directed verdict motion, the trial court must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *Dalon v. Golden Lanes, Inc.,* 320 S.C. 534, 466 S.E.2d 368 (Ct.App.1996). The court is only concerned with the existence or non-existence of evidence and does not have the authority to decide credibility issues nor to resolve conflicts in testimony. *Garrett v. Locke,* 309 S.C. 94, 419 S.E.2d 842 (Ct.App.1992). The trial court should deny a directed verdict motion if the evidence presents more than one reasonable

inference or if its inferences are in doubt. *Smith v. Wal–Mart Stores, Inc.*, 314 S.C. 248, 442 S.E.2d 606 (1994).

■ Apparent authority to do a particular act "is created as to a third person by written or spoken words *or any other conduct of the principal* which, reasonably interpreted, causes the third person to believe the principal consents to have the act done on his behalf by the person purporting to act for him." *Muller v. Myrtle Beach Golf and Yacht Club*, 303 S.C. 137, 142, 399 S.E.2d 430, 433 (Ct.App.1990) (citing RESTATEMENT (SECOND) OF AGENCY § 27 (1958)) (emphasis added). The principal must either intend to cause the third person to believe the agent is authorized to act for him, *or he should realize his conduct is likely to create such belief. Id.*

■ Generally, agency is a question of fact, so that if there are *any facts* tending to prove an agency relationship, it then becomes a question for the jury. *Gathers v. Harris Teeter Supermarket, Inc.*, 282 S.C. 220, 317 S.E.2d 748 (Ct.App.1984).

■ It is undisputed that Warner was the landlords' agent. At issue, then, is the extent of Warner's agency. Bergeron testified he gave Warner broad authority to manage the property. For instance, as the rental property manager for the landlords throughout the five-year period during which the tenant occupied the property, Warner managed the lease, received rent payments, and ordered necessary repairs to the property. Warner also prepared the rental agreements between the landlords and the tenant for their signing and negotiated the terms with the tenants. The landlords always dealt with the tenant through Warner and there were no contacts between the landlords and the tenant except through Warner.

When the tenant requested in writing whether she could terminate the lease or be allowed to sublet the property, Warner told the tenant the landlords were thinking about selling the property, and the landlords did not want the tenant to sublease it, so the tenant could vacate the property. The landlords did not communicate their opposition to this arrangement between the tenant and Warner until they filed this lawsuit.

Viewing the evidence in the light most favorable to the tenant, as we are required to do, we find there is some evidence in the record for a jury to conclude that, under the doctrine of apparent authority, the conduct of the landlords in clothing Warner with so much authority to manage the property would allow a reasonably prudent person in the tenant's position to believe Warner had the authority to release the tenant from her obligations under the lease. *See Rickborn v. Liberty Life Ins. Co.,* 321 S.C. 291, 468 S.E.2d 292 (1996) (under the doctrine of apparent authority, a principal is bound by the acts of its agent when it has placed the agent in such a position that persons of ordinary prudence, reasonably knowledgeable with business usages and customs, are led to believe the agent has certain authority and they in turn deal with the agent based on that assumption); *Fernander v. Thigpen,* 278 S.C. 140, 293 S.E.2d 424 (1982) (agency may be implied or inferred and may be shown directly or circumstantially by the conduct of the purported agent exhibiting a pretense of authority with the knowledge of the alleged principal); 3 AM. JUR.2d *Agency* § 79, at 584 (1986) ("The apparent authority of an agent results from ... conduct ... or other manifestations of the principal's consent, whereby third persons are justified in believing that the agent is acting within his authority.... [S]uch authority is implied where the principal passively permits the agent to appear to a third person to have the authority to act on his behalf.").

## II.

◼ The tenant contends the trial court erred in directing a verdict in favor of the landlords because they failed to mitigate their damages. We disagree.

◼ A party injured by the acts of another is required to do those things a person of ordinary prudence would do under the circumstances to mitigate damages; however, the law does not require unreasonable exertion or substantial expense for this to be accomplished. *McClary v. Massey Ferguson, Inc.,* 291 S.C. 506, 354 S.E.2d 405 (Ct.App.1987). Moreover, the party who claims damages should have been minimized has the burden of proving they could reasonably have been avoided or reduced. *Tri–Continental Leasing Corp. v. Stevens,*

*Stevens & Thomas, P.A.,* 287 S.C. 338, 338 S.E.2d 343 (Ct. App.1985).

The landlords requested that Warner attempt to rent the property. From January until March 1994, Warner advertised the property. In June of 1994, the landlords had the property listed for sale. By the date of trial, the property was no longer listed for sale.

The tenant failed to present any evidence showing what types of advertising would have been reasonable, how much sooner the landlords could have rented or sold the property through other methods, or that the landlords' actions to rent the property were inadequate or improper. We conclude, therefore, the tenant failed to sustain her burden of proving the landlords could have reasonably avoided or reduced their damages. *See Brendle's Stores, Inc. v. OTR,* 978 F.2d 150, 158 (4th Cir.1992) (wherein the court, applying South Carolina law, held the tenant's assignee failed to show that the landlord did not mitigate damages and noted that, "although [the landlord] did not expedite repairs of the building, [the tenant's assignee] failed to present evidence showing that this inaction discouraged any prospective tenants or that extensive advertising would have resulted in a new tenant").

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

HOWELL, C.J., concurs.

ANDERSON, J., concurs in part and dissents in part in a separate opinion.

ANDERSON, Judge (concurring in part and dissenting in part in a separate opinion):

I concur with the decision to affirm the trial judge on the issue of mitigation of damages. I dissent with that part of the majority opinion that reverses the trial judge in directing a verdict on the apparent authority issue.

## THE DOCTRINE OF APPARENT AUTHORITY

### (Unpaid Rent)

Tenant argues the trial court erred in granting a directed verdict to the landlords as to the amount of rent owed by

tenant under the lease. Tenant contends Warner, as agent of the landlords, had apparent authority to release tenant from her obligations under the lease.

Tenant told Warner to ask the landlords if she could terminate the lease or sublet the property. The lease required permission of the landlords before tenant could sublet. Warner later told tenant "they're thinking about selling the house anyway, so you can go ahead and leave, they don't want you to sublease it." Warner inspected the property and presented tenant with an itemized list of damages totaling $1369.54. Because tenant's security deposit only covered $1000 of the damage, she wrote a check for the balance and "assumed that was the list of the damages I was required to pay for." When tenant wrote this check, she assumed her liability under the lease terminated. Warner did not tell the landlords she had released tenant from her obligations under the lease nor did she ask if tenant could sublet the property.

The doctrine of apparent authority focuses on the principal's manifestation to a third party that the agent has certain authority. *Rickborn v. Liberty Life Ins. Co.,* 321 S.C. 291, 468 S.E.2d 292 (1996). Accordingly, the principal is bound by the acts of its agent when it places the agent in such a position that persons of ordinary prudence, reasonably knowledgeable with business usages and customs, are led to believe the agent has certain authority and they in turn deal with the agent based on that assumption. *Id.* Thus, the concept of apparent authority depends upon manifestations by the principal to a third party and the reasonable belief by the third party that the agent is authorized to bind the principal. *Beasley v. Kerr–McGee Chem. Corp.,* 273 S.C. 523, 257 S.E.2d 726 (1979); *Visual Graphics Leasing Corp. v. Lucia,* 311 S.C. 484, 429 S.E.2d 839 (Ct.App.1993). *See also Moore v. North American Van Lines,* 310 S.C. 236, 423 S.E.2d 116 (1992) (basis of apparent authority is representations made by principal to third party and reliance by third party on those representations).

Apparent authority must be established based upon manifestations by the principal, not the agent. *Shropshire v. Prahalis,* 309 S.C. 70, 419 S.E.2d 829 (Ct.App.1992). The proper focus in determining a claim of apparent authority is

not on the relationship between the principal and the agent, but on that between the principal and the third party. *Vereen v. Liberty Life Ins. Co.,* 306 S.C. 423, 412 S.E.2d 425 (Ct.App. 1991). Apparent authority to do an act is created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe the principal consents to have the act done on his behalf by the person purporting to act for him. *Frasier v. Palmetto Homes,* 323 S.C. 240, 473 S.E.2d 865 (Ct.App.1996). Either the principal must intend to cause the third person to believe the agent is authorized to act for him, or he should realize his conduct is likely to create such belief. *Id.*

To establish apparent agency, it is not enough simply to prove the purported principal, by either affirmative conduct or conscious and voluntary inaction, has represented another to be his agent. *Id.* In order for a third party to recover against the principal based upon this theory, it must be shown he reasonably relied on the indicia of authority **originated by the principal** and such reliance must have effected a change of position by the third party. *Beasley v. Kerr–McGee Chem. Corp.,* 273 S.C. 523, 257 S.E.2d 726 (1979). *See also Graves v. Serbin Farms, Inc.,* 306 S.C. 60, 409 S.E.2d 769 (1991) (elements which must be proven to establish apparent agency are: (1) purported principal consciously or impliedly represented another to be his agent; (2) reliance upon representation; and (3) change of position to relying party's detriment).

It is the duty of one dealing with an agent to use due care to ascertain the scope of the agent's authority. *Justus v. Universal Credit Co.,* 189 S.C. 487, 1 S.E.2d 508 (1939); *Frasier, supra.* Even under a theory of apparent authority, belief in the agent's authority must be reasonable. *Crim v. E.F. Hutton, Inc.,* 298 S.C. 448, 381 S.E.2d 492 (1989). The mere fact Warner was the landlords' agent does not support a reasonable belief the landlords would be bound if Warner agreed to vary the lease terms.

The signatures on the lease are those of the landlords and not of Warner. The landlords approved the terms of the lease. It is reasonable to expect the landlords must also approve any variance of the lease terms.

Here, there is no evidence the landlords did anything to make it appear Warner had the authority to vary the terms of the lease. *See Shropshire v. Prahalis,* 309 S.C. 70, 419 S.E.2d 829 (Ct.App.1992) (landlord's agent did not have apparent authority to authorize tenant to sublease premises in violation of lease provision, absent evidence landlord did anything to make it appear agent had authority to vary lease terms). Tenant presented no evidence the landlords held Warner out as having the authority to release tenant from her lease obligations. Apparent authority must be established based upon the manifestations of the **principal**, not the agent. *Orphan Aid Soc'y v. Jenkins,* 294 S.C. 106, 362 S.E.2d 885 (Ct.App.1987).

Tenant spoke to the landlords only three times during the five years she lived in their house. The landlords visited the residence (1) to discuss tenant's dogs in late 1989 or early 1990; (2) to deliver additional furnishings; and (3) to meet with tenant, Warner, and a plumber on December 27, 1993, to inspect a ceiling leak in the living room. However, in those conversations, the parties did not discuss the lease, tenant's decision to vacate the premises, tenant's desire to sublet the residence, tenant's desire to be released from the lease, or Warner's authority as agent of the landlords.

The landlords were unable to rent the residence after tenant left in the middle of her lease. Tenant vacated the residence on January 31, 1994. Rent was $1300 a month. The lease ran until September 30, 1994.

Because tenant did not meet her burden of proving Warner possessed the apparent authority to forgive the rent owed by tenant, the landlords were entitled to rent from February 1, 1994, until September 30, 1994, eight months, for a total of $10,400.

I would affirm the trial judge on the direction of verdict in regard to the issue of "apparent authority."