UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-1986

NORFOLK SOUTHERN RAILWAY COMPANY,

Plaintiff - Appellee,

v.

BALTIMORE AND ANNAPOLIS RAILROAD, d/b/a Carolina Southern Railroad
Company, d/b/a Waccamaw Coast Line Railroad Company,

Defendant - Appellant.

Appeal from the United States District Court for the District of South Carolina, at
Florence.  Bruce H. Hendricks, District Judge.  (4:13-cv-01264-BHH)

Argued:  September 14, 2017                       Decided:  November 16, 2017

Before NIEMEYER, MOTZ, and THACKER, Circuit Judges.

Affirmed in part, and remanded in part by unpublished per curiam opinion.

**ARGUED:** William Francis Marion, Jr., HAYNSWORTH SINKLER BOYD, P.A.,
Greenville, South Carolina; Thomas Casey Brittain, THE BRITTAIN LAW FIRM, P.A.,
Myrtle Beach, South Carolina, for Appellant.  Christopher Jordan Merrick, KEENAN
COHEN & MERRICK P.C., Ardmore, Pennsylvania, for Appellee. **ON BRIEF:** Denny
P. Major, HAYNSWORTH SINKLER BOYD, P.A., Greenville, South Carolina; A.
Preston Brittain, THE BRITTAIN LAW FIRM, P.A., Myrtle Beach, South Carolina, for

Appellant. Paul D. Keenan, KEENAN COHEN & MERRICK P.C., Ardmore, Pennsylvania, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

On May 9, 2013, Norfolk Southern Railway Co. ("Norfolk Southern") filed suit against Baltimore & Annapolis Railroad Co. ("B&A") to recover for 31 railcars that had been stranded on B&A's railroad track for nearly two years. Below, Norfolk Southern brought two claims: (1) conversion of the railcars; and (2) "car hire," a rental charge imposed upon the owner of the track possessing the cars.

On February 18, 2015, after 21 months of discovery, the district court granted partial summary judgment to Norfolk Southern. The district court ordered B&A to return the railcars, or, in the alternative, to pay Norfolk Southern the fair market value. After another ten months passed without resolution, the district court held B&A in contempt, ordering payment of $582,172.90, the purported fair market value of the railcars. Ultimately, the district court granted Norfolk Southern's motion for judgment as a matter of law with regard to the car hire claim and awarded rental damages for the stranded cars in the amount of $649,755.57.

B&A challenges the car hire and fair market value awards on a multitude of grounds. We affirm the district court on all but one of these grounds -- the calculation of the fair market value of the 31 stranded railcars. We are unable to adduce evidence in the record to justify such an award. Therefore, we remand with instructions that the district court (1) receive evidence on the fair market value of the railcars and (2) calculate the appropriate damages in accordance with that evidence.

I.

A.

At all relevant times, B&A owned 80 miles of rail track, which included 187 bridges in North Carolina and South Carolina. In May 2011, the Federal Railroad Administration ("FRA") inspected 52 of B&A's bridges, and found "a pervasive level of significant deterioration." J.A. 249.[*] The FRA notified B&A of the deterioration and informed B&A of its duty to obtain an engineer to determine the costs of repair. The FRA expected B&A to "adhere to the engineer's repair recommendations" and to bear the costs of repair. J.A. 291.

Three months later, in August 2011, B&A took possession of 31 railcars owned by Norfolk Southern and transported them over the noncompliant track. B&A had not previously informed Norfolk Southern of the noncompliant track before taking possession of the railcars. Thirteen minutes after delivering Norfolk Southern's railcars over the bridges, B&A applied for, and received from the FRA, an embargo prohibiting travel across the noncompliant bridges. Norfolk Southern's railcars were thus stranded beyond the bridges until the embargo could be lifted.

B.

Norfolk Southern filed this suit on May 9, 2013, 21 months after its railcars became stranded. Norfolk Southern asserted a claim for B&A's failure to pay "car hire,"

---

[*] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal. Citations to the "S.A." refer to the Supplemental Appendix.

a rental charge imposed by the owner of a railcar for the time a railroad has possession of a railcar. Norfolk Southern amended the complaint on June 19, 2013, to add a conversion claim.

On April 18, 2014, Norfolk Southern moved for summary judgment, seeking return of the railcars and an award of car hire damages. The district court granted partial summary judgment on February 18, 2015:

> [T]he Court finds that Norfolk Southern is []entitled to judgment as a matter of law on the issue of liability . . . [and] entitled to judgment as a matter of law on the issue of damages for car hire that accrued between August of 2011 and March 5, 2012 . . . . The Court finds that genuine issues of material fact preclude the entry of summary judgment on the issue of damages for car hire that accrued between March 5, 2012, and the present . . . . The parties are hereby ordered to take . . . action[] to facilitate the return of the [railcars] to Norfolk Southern.

J.A. 332–33.

In the same order, the district court ordered Norfolk Southern to provide a good faith estimate of the costs associated with retrieving the still stranded railcars. The court then ordered B&A, within 14 days of receiving that estimate, to select one of three options: (1) accept responsibility for Norfolk Southern's estimate; (2) make alternate arrangements for moving the railcars; or (3) purchase the railcars at fair market value calculated at the time the railcars were transported onto B&A's track in August 2011.

On February 20, 2015, Norfolk Southern furnished an estimate of over $800,000 to retrieve the railcars. Although under a deadline to select an option provided by the court by early March 2015, B&A vacillated for months as to whether to return or purchase the railcars. B&A first suggested a $400,000 purchase price for the railcars, a

number the district court noted B&A "seemingly pulled out of mid-air." J.A. 381. Then, B&A claimed it would lift and return the railcars using an unlicensed railcar shuttle service. Finally, it represented that the noncompliant bridges would be repaired so the cars could be returned by rail. While B&A explored these options, the railcars remained stranded and Norfolk Southern remained uncompensated. The district court extended the deadlines imposed on B&A on several occasions. In January 2016, four months after the latest deadline had passed, the district court held B&A in contempt for its "repeated[]" failure to meet court imposed deadlines. J.A. 443. The district court ordered B&A to pay $582,172.90 for the stranded railcars, a number the court deemed to be the fair market value.

On appeal, we now confront the question of how the district court reached its calculated fair market value. The value first appears in the record in the district court's August 14, 2015 order enjoining B&A from removing funds from escrow. The district court stated: "$582,172.90 . . . [is the e]stimated 2011 fair-market value of the 31 stranded railcars, awarded by the Court in its February 18, 2015 Order, using the industry-standard depreciated values established by the Association of American Railroads [("AAR")]." J.A. 414 at n.1. Indeed, Norfolk Southern provided this exact value to the district court in an email dated August 13, 2015. Norfolk Southern attached a spreadsheet populated by unsubstantiated numbers purporting to represent the fair market value of each of the 31 stranded railcars to this email. But beyond Norfolk Southern's bare assertion, there is no other supporting evidence in the record for the proper fair market value.

6

C.

On March 23, 2016, Norfolk Southern moved for judgment as a matter of law on the remaining car hire claim, arguing that it was entitled to rental damages from August 2011 through December 2015 as a matter of law. B&A opposed the motion, claiming that (1) the car hire award, in light of the already awarded fair market value for the railcars, constituted a double recovery; and (2) a question of fact existed as to whether Norfolk Southern had a duty to mitigate its damages.

The district court entered judgment as a matter of law to Norfolk Southern on April 25, 2016. The district court concluded that the awards did not constitute a double recovery because the car hire damages reflect the opportunity cost lost to Norfolk Southern for the time the railcars were stranded. The district court also held that B&A had not met its burden of proof in establishing its affirmative defense that Norfolk Southern failed to mitigate damages. The district court then ordered B&A to pay $649,755.57, plus interest -- the amount of all accrued car hire from August 2011 to December 2015.

B&A timely appealed.

II.

On appeal, B&A challenges the subject matter jurisdiction of the district court, extent of liability, and calculation of damages.

7

A.

Subject Matter Jurisdiction

B&A argues that the Interstate Commerce Commission Termination Act ("ICCTA") divests the federal courts of jurisdiction to hear this case. In the alternative, B&A claims the district court should have referred the case to the Surface Transportation Board ("STB") pursuant to the primary jurisdiction doctrine.

1.

Concurrent Jurisdiction

We first turn to whether the district court had concurrent original jurisdiction over this dispute. With regard to subject matter jurisdiction, we review legal questions de novo. *U.S. ex rel Vuyyuru v. Jadhav*, 555 F.3d 337, 348 (4th Cir. 2009).

Traditionally, railroad regulation has been "among the most pervasive and comprehensive of federal regulatory schemes." *Chi. & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 318 (1981). Indeed, for most of the twentieth century, the Interstate Commerce Commission ("ICC") regulated railroad affairs pursuant to the Interstate Commerce Act ("ICA"). However, in 1995, Congress "substantially deregulated the rail and motor carrier industries" by replacing the ICC with the ICCTA. *Pejepscot Indus. Park, Inc. v. Me. Cent. R.R. Co.*, 215 F.3d 195, 195 (1st Cir. 2000).

The ICCTA establishes the STB and granted it "exclusive" jurisdiction over the following:

> (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service,

8

interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and

(2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State . . . .

49 U.S.C. § 10501(b). However, the ICCTA also provides, "[a] person may file a complaint with the [STB] . . . *or bring a civil action . . .* to enforce liability against a rail carrier." *Id*. § 11704(c)(1) (emphasis supplied). Read together, these provisions create some doubt as to whether federal courts retain jurisdiction over disputes governed by the ICCTA. *See Pejepscot*, 215 F.3d at 203 (describing the "quandary Congress created by using inconsistent language"). Several sister circuits have concluded that the federal courts and the STB share concurrent original jurisdiction over disputes governed by the ICCTA. *See Consol. Rail Corp. v. Grand Trunk W. R.R. Co.*, 607 F. App'x 484 (6th Cir. 2015); *Elam v. Kansas City S. Ry. Co.*, 635 F.3d 796 (5th Cir. 2011); *Pejepscot*, 215 F.3d 195.

For years, although the ICA granted the ICC "exclusive" jurisdiction over railroad disputes, federal courts still exercised original jurisdiction. 49 U.S.C. § 10501 (1994); *see Overbrook Farmers Union Coop. v. Mo. Pac. R.R. Co.*, 21 F.3d 360 (10th Cir. 1994). The later enacted ICCTA retains this same language granting the STB "exclusive" jurisdiction. 49 U.S.C. § 10501 (2016). Indeed, Congress intended to "reenact" remedial provisions of the ICA, including "authority for injured persons to seek judicial enforcement of agency orders *and to seek damages for a violation of the statute*." H.R. Rep. No. 104-422, at 195 (1995) (Conf. Rep.) (emphasis supplied). Thus, it appears

"Congress intended only to preempt state law and remedies, not to give the STB exclusive jurisdiction over ICCTA claims." *Pejepscot*, 215 F.3d at 204.

B&A urges a narrow reading of the ICCTA and suggests federal courts merely have jurisdiction over actions to enforce liability determinations made by the STB. But, this reading is not consistent with the ICCTA as a whole. Specifically, § 11704(c)(1) of the ICCTA permits individuals to file suit in federal district court "to enforce liability" against rail carriers. 49 U.S.C. § 11704(c)(1) (2012). Section 11704(c)(2) grants federal district courts jurisdiction over claims involving a "person for whose benefit an order of the [STB] requir[es] the payment of money." *Id.* § 11704(c)(2). To read § 11704(c)(1) as granting federal courts jurisdiction over *enforcement actions only* would render § 11704(c)(2) duplicative. Sections 11704(c)(1) and 11704(c)(2), together, suggest federal courts retain jurisdiction over a broad range of disputes.

We agree with the First, Fifth, and Sixth Circuits in concluding that federal courts retain original jurisdiction, concurrent with the STB, over disputes governed by the ICCTA. *See Consol. Rail Corp.*, 607 F. App'x 484; *Elam*, 635 F.3d 796; *Pejepscot*, 215 F.3d 195. Accordingly, the district court properly possessed jurisdiction over this dispute.

2.

Primary Jurisdiction

We next address whether the district court should have referred this case to the STB under the primary jurisdiction doctrine. The primary jurisdiction doctrine is "designed to coordinate administrative and judicial decision-making by taking advantage

10

of agency expertise." *Envtl. Tech. Council v. Sierra Club*, 98 F.3d 774, 789 (4th Cir. 1996). A district court might refer a case to an administrative body to resolve "issues of fact not within the conventional experience of judges or cases which require the exercise of administrative discretion." *Id.* We review a district court's decision not to do so for abuse of discretion. *Id.*

Here, the district court faced basic legal questions as to the extent of B&A's liability. The district court was well equipped to determine whether Norfolk Southern had a duty to mitigate damages, whether the awarded damages constituted double recovery, and whether B&A had a duty to return or pay for the railcars. Each of these issues involve basic contract principles. Further, we have no reason to believe the STB has particular expertise with regard to stranded railcars and the appropriate resultant damages. Accordingly, we find the district court did not abuse its discretion by not referring the case to the STB.

### B.

### Extent of Liability

The district court held B&A liable for both the fair market value of the railcars ($582,172.90) and the car hire rental amount from August 2011 through December 2015 ($649,755.57). B&A first argues the combined awards constitute a double recovery. Next, B&A claims Norfolk Southern had a duty to mitigate its car hire damages. We review the district court's legal conclusions as to damages de novo. *Simms v. United States*, 839 F.3d 364, 368 (4th Cir. 2016).

11

## 1.

## Double Recovery

We conclude that the awards in this case do not constitute a double recovery. The district court found that Norfolk Southern was entitled to both the fair market value of the railcars and the car hire rental damages from August 2011 through December 2015. B&A argues the fair market value award is an award for B&A's conversion of the railcars in August 2011, which would render subsequent car hire accrual improper. But the district court did not find that conversion took place in August 2011. Indeed, B&A insisted throughout the litigation -- as late as July 2015 -- that it would return the railcars to Norfolk Southern. Only when the district court compelled B&A to purchase the railcars in January 2016 was it clear that Norfolk Southern would never retake possession.

Instead, the district court held that the car hire award accruing from August 2011 through December 2015 constitutes an opportunity cost lost to Norfolk Southern for the four and a half year period it suffered the dispossession of 31 railcars through no fault of its own. For that period, B&A possessed Norfolk Southern's railcars, without any form of compensation, and without any certainty as to whether B&A would ever return the stranded railcars. Because the awards of damages here were to requite two separate wrongs, we affirm.

## 2.

### Mitigation

B&A did not produce admissible evidence to carry its burden on its affirmative defense of mitigation. South Carolina law imposes no duty to mitigate damages where the damaged party would incur "unreasonable exertion or substantial expense" to do so. *Genovese v. Bergeron*, 490 S.E.2d 608, 611 (S.C. Ct. App. 1997). B&A failed to produce admissible evidence of any means by which Norfolk Southern could have mitigated its damages without unreasonable exertion or substantial expense. Accordingly, we affirm the district court's findings on the extent of liability.

### C.

### Calculation of Damages

Finally, we review of the district court's calculation of the fair market value award. We conclude that there was not sufficient evidence in the record to support the district court's $582,172.90 fair market value award.

On February 18, 2015, the district court granted partial summary judgment to Norfolk Southern, finding B&A liable for the fair market value of the railcars. On January 6, 2016, the district court awarded $582,172.90, the purported fair market value of the railcars, in the same order in which it found B&A in contempt for repeatedly failing to meet the court's deadlines. The district court held, "[b]ecause [B&A] has repeatedly failed to return the cars to [Norfolk Southern] by the deadlines set forth by the Court, [B&A] shall pay Norfolk Southern for 31 stranded railcars in the principal amount

of $582,172.90." J.A. 443. Accordingly, we understand the $582,172.90 award as a summary judgment award on the value of the railcars.

Calculation of damages is a finding of fact. A party asserting a fact at summary judgment "*must* support the assertion." Fed. R. Civ. P. 56(c)(1) (emphasis supplied). Rule 56 affords the nonmovant an opportunity to object to the factual bases of the motion. *See* Fed. R. Civ. P. 56(c)(1)(B). A movant may support the motion by "citing to particular parts of materials *in the record*, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A) (emphasis supplied).

Here, Norfolk Southern has failed to identify any place *in the record* where the $582,172.90 valuation was supported by evidence before the trial court. Instead, Norfolk Southern provided the value to the district court for the purpose of determining the amount to be held in escrow. B&A raised no objection to this value "for escrow purposes only." S.A. 7. The value itself is found on a spreadsheet Norfolk Southern emailed to the district court, populated by unsubstantiated values purportedly representing the fair market value for each of the 31 railcars. Norfolk Southern claims these numbers appear in the AAR field manual, but did not furnish that supporting evidence to the district court. Oral Argument at 31:31, *Norfolk S. Ry. Co. v. Balt. and Annapolis R.R.*, No. 16-1986 (4th Cir. Sept. 14, 2017), http://www.ca4.uscourts.gov/oral-argument/listen-to-oral-arguments. Because there must be factual support in the record before finding the fair

14

market value of the railcars as of the time of the conversion in 2016 as a matter of law, we remand with instructions to develop such a record to support summary judgment.

III.

We conclude that the district court possessed original jurisdiction over this dispute. We affirm on all questions of liability for the reasons stated in the district court's orders granting summary judgment and judgment as a matter of law. We remand for further development of the record regarding the fair market value of the railcars so the district court may recalculate the appropriate damages. The decision of the district court is

*AFFIRMED IN PART, AND REMANDED IN PART.*